WILLIAM SKINNER (SBN 257139)
2667 Camino Del Rio South
Suite 100B
San Diego, CA 92108
Phone: (800) 659-5937
Fax:    (800) 601-9076

Attorney for Defendant CARY TABORA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS LLC,<br>A Corporation,<br><br>               Plaintiff,<br><br>v.<br><br>CARY TABORA,<br><br>               Defendant. | Case No. 11-CV0651 IEG JMA<br><br>**DEFENDANT CARY TABORA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Date:      September 26, 2011<br>Time:     10:30 AM<br>Courtroom: 1<br>Judge:    Hon. Irma E. Gonzalez |

## INTRODUCTION

This is a motion for dismissal based upon lack of personal jurisdiction and improper venue under Fed. R. Civ. P. 12(b)(2) and (3).

Defendant Cary Tabora is, and for the past four years has been, a resident of the State of New York. Tabora Decl. ¶ 2. Plaintiff Liberty Media Holdings has brought this suit in the Southern District of California, a place that Defendant has never visited and never even given much thought. Tabora Decl. ¶ 4.

Thereafter, Plaintiff unsuccessfully filed, then "withdrew," an amended complaint naming another defendant who also lives and works in New York and who has no connections to California whatsoever. This person would be a witness on Defendant's behalf. Tabora Decl. ¶ 5.

And according to its own attorney of record, Plaintiff and its subsidiary Corbin Fisher—which produced the work described in these proceedings—have since, or will soon, move all operations to Nevada. Plaintiff's attorney has recently moved there himself and his new office bears a Las Vegas address. Plaintiff's current San Diego address at 302 Washington St. #321 is a mailbox at a UPS Store. Skinner Decl. ¶ 3-6.

Because of the above facts and the argument presented below, this case should be dismissed.

## ARGUMENT

### I. THE ORIGINAL COMPLAINT STILL CONTROLS THE CASE

Some explanation of the history of this case must be made to explain why this motion is being directed at the original complaint despite the fact that an amended complaint is on record. On March 31, Plaintiff filed its complaint (the "original complaint") in this action. On July 19, 110 days later, it filed an amended complaint without written consent of the defendant and without leave of the court, in violation of Fed. R. Civ. P. 15(a)(1). On August 8 it served the amended complaint on Defendant incorrectly using Rule 5 rather than Rule 4 as Rule 5(a)(2) mandates when the defendant is in default and the amended complaint substantially differs from the original. That same day Plaintiff filed a "notice of correction" stating that a summons for a second defendant added in the Amended Complaint hadn't actually been filed at all. And finally on August 12, Plaintiff apparently attempted to "withdraw" the entire amended complaint utilizing Local Rule 7.1(g)(1), which actually applies to motions.

Because of all of the above oddities, and because Plaintiff appears to be stating in its "Notice of Withdrawal" that it has no interest in pursuing an Amended Complaint after all, it seems clear that the Amended Complaint was a nullity *ab initio* and that the original Complaint still controls the case. And it is therefore to the original Complaint that Defendant addresses his motion.

However, if the court finds that the Amended Complaint was not a nullity but has some sort of inchoate, spectral existence casting its malformed shadow over this case, we request the court to either treat this section as a motion to strike the Amended Complaint in its entirety under Fed. R. Civ. P. 12(f)(2), or strike the Amended Complaint *sua sponte* under Rule 12(f)(1).

## II. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANT

Both the California long-arm statute and Fed. R. Civ. P. 4(k)(2) require that the exercise of personal jurisdiction comply with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Generally, a court may exercise jurisdiction over a nonresident defendant only where the defendant's minimum contacts with the forum state render the maintenance of the action inoffensive to traditional concepts of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

**A. There is No General Personal Jurisdiction**

There are two types of personal jurisdiction—general and specific. General jurisdiction exists where a defendant's contacts with the forum state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). A defendant whose contacts are substantial or continuous and systematic is subject to the jurisdiction of the forum even where the cause of action is unrelated to the contacts. *Id.*

But "[t]he standard is met only by 'continuous ... operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *Mavrix Photo Inc v. Brand Technologies Inc*, No. 09-56134 slip op. (9th Cir. Aug. 8, 2011) (citing *JCKing v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir.2011) (alterations in original) (quoting *International Shoe*, 326 U.S. at 318)).

Here, Defendant has never lived in or even visited California. While he may have, over the course of his life, done sporadic shopping over the internet or telephone with businesses located in California, this is not enough to support general jurisdiction in the state. Nor has the Complaint alleged any type of systematic or continuous contacts with California, which Defendant doesn't have anyway. Therefore, general personal jurisdiction is inapplicable in this case.

### B. There is No Specific Jurisdiction Either

Specific jurisdiction exists where (1) The non-resident defendant has purposefully directed his activities or consummated some transaction with the forum or resident thereof; or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. In cases involving tortious conduct, the court will employ a purposeful direction analysis. *Schwarzenegger*, 374 F.3d at 802. "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or

not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803 (alterations in original.))

The 9th Circuit has called copyright infringement "a tortlike cause of action" and has said that purposeful direction "is the proper analytical framework." Id. (citing *Schwarzenegger*, 374 F.3d at 802).

And to find that a defendant has "purposefully directed" his action to the forum state, a court must find that the action passed the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). Specifically, the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803.

Furthermore, the line of cases where courts have found "purposeful direction" have been almost entirely related to companies who have directed business toward a forum state or otherwise "exploited its market." See, e.g., *Brayton Purcell LLP v. Recordon & Recordon*. 606 F.3d 1124, 1156-58 (9th Cir. 2010); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019–21 (9th Cir. 2002); *Cybersell, Inc. v. Cybersell*, Inc., 130 F.3d 414, 417 (9th Cir. 1997).

Individual consumers, like the Defendant, don't know and don't care where various media companies like the Plaintiff are located. The question generally doesn't even cross their minds.

Here, the defendant is an individual, a resident of New York who has no business dealings with California other than an occasional product or service purchased via internet or telephone. He hasn't purposefully directed any actions toward California, nor indeed given California much thought whatsoever.

In *Brayton Purcell*, the court held that "purposeful direction" existed when one company directed its advertising into another company's jurisdiction. *Brayton Purcell* 575 F.3d 981. There was knowledge and there was intent. Here there is neither. Before this case,

had the Defendant been asked where Plaintiff's principal place of business was located, he would have responded, "I have no idea."

**1. No supporting facts exist in the complaint to support personal jurisdiction**

*Brayton Purcell* also held that, "For purposes of plaintiff's prima facie jurisdictional showing, 'uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor.'" *Id.* (quoting *Rio Props*., 284 F.3d at 1019).

Here, there are no affidavits or declarations supporting Plaintiff's complaint. The only statements in the complaint that could even be construed as alleging some sort of minimum contacts with the forum are in Paragraph 3 where Plaintiff mentions something about Defendant "aiming his acts" toward San Diego as well as a reference to "contractual consent" to venue here. Defendant controverts these claims in his attached declaration. Tabora Decl. ¶ 6-7.

If a one-sentence statement in a complaint hinting at "contractual consent" is all that's needed to sustain jurisdiction, then Plaintiffs will, as a matter of course, simply start adding that line to every complaint. Such actions must be prevented.

**2. A forum selection clause, even if shown, is invalid vis-a-vis Plaintiff's claim.**

Even if Plaintiff shows that there was some sort of contract in existence between the parties, it has not alleged, nor would it prove, that the claim in its Complaint "arose under" that contract. A conscionable forum selection clause can generally only bind the parties to a certain forum for those acts that specifically arise under it, not for any act in perpetuity by either party unrelated to the dealings envisioned by the contract. Especially when it's a "take it or leave it" contract of adhesion between parties with unequal bargaining power.

The seminal Supreme Court cases on forum selection clauses favored them when used as a shield by defendants, not when used as a sword by plaintiffs. *The Bremen v. Zapata Off-*

*Shore Company*, 407 U.S. 1 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

But either way, nowhere in the complaint is there an explanation of any "contract" between Plaintiff and Defendant or how a contract relates to Plaintiff's claim at all. Again, there is no affidavit, declaration, or other facts supporting it.

**C. Personal Jurisdiction Would Not Comport with Fair Play and Substantial Justice**

To hold that a graduate student living and working in New York City must fly across the country to defend a suit filed against him in San Diego by a media conglomerate that is no longer even located in the jurisdiction does not "comport with fair play and substantial justice."

Liberty Media Holdings and its subsidiary, Corbin Fisher, formerly had their headquarters in San Diego. However, the company has since moved or will be moving its main place of business to Las Vegas. Its attorney of record has already moved there. Now, its address at 302 Washington Street in Hillcrest is nothing more than a mailbox at a UPS Store.

If the court allows this suit to stay in San Diego, the result would be that no parties, no witnesses, and only one attorney of record would be located anywhere in the district, or for that matter anywhere in the entire state.

This does not comport with fair play and substantial justice, nor does it make any sense whatsoever.

Because Plaintiff has not established that the Defendant "purposefully directed" his actions toward San Diego or contractually agreed to a forum for its claim here, Plaintiff has not shown that the Defendant has even minimum contacts with San Diego. And since the Plaintiff itself and its attorney of record would not even be in California when a trial takes

place, all parties and all witnesses would have to fly in from places across the country. Because of these iniquities, the court must dismiss Plaintiff's claim.

**THE COURT MUST DISMISS FOR LACK OF PROPER VENUE**

**A. Venue Fails for the Same Reasons Specific Personal Jurisdiction Failed**

In its complaint, Plaintiff states "Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a)." But courts have consistently found that § 1391(b) is inapplicable to this type of case. The Supreme Court has held that "[t]he venue of suits for infringement of copyright is not determined by the general provision governing suits in the federal district courts," but rather by the specific copyright venue provision passed by Congress. *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923). *See also Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966) (noting that if the plaintiff's cause of action was a claim under federal copyright law, "the suit may be brought only in the district where the defendant 'resides or may be found'" (quoting 28 U.S.C. § 1400(a)); *Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1143 (N.D. Cal. 2007) (section 1400(a) governs venue for copyright infringement suits (citing *Lumiere*)).

Accordingly, Plaintiff's reliance on § 1391(b) is unfounded and venue is this case is only proper in a district in which "the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).

The 9th Circuit has interpreted the phrase "may be found" to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction. *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir.1997), rev'd on other grounds; *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

This too requires the "Calder-effects" test which fails for the reasons argued above—Defendant did not "purposely direct" his activities toward the Southern District of California.

And even if Plaintiff states that Defendant could have foreseen his alleged effects on this District, the 9th Circuit has emphasized that "something more than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805.

To hold otherwise would subject every internet user to personal jurisdiction, and to venue, in every district court in the land. Internet data frequently travel across the country and around the world without users ever knowing or caring, even though the more learned of them could arguably "foresee" that possibility. One web site may transfer digital information through a dozen different districts, and to argue that the user "purposely directed" his data through every district on the way would simply be untrue. It is the infrastructure of the internet itself that directs traffic, not each individual person.

**B. The Court Should Dismiss Rather than Transfer Venue to the Southern District of New York**

The court has the power to transfer this case under 28 USC § 1404(a) to the Southern District of New York in the interest of justice and for the convenience of parties and witnesses. *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir. 2002).

It has already been shown that all parties will be outside the state of California during any trial. In addition, the Defendant intends to call his ex-roommate, a Mr. Whetstone, to testify as to Defendant's non-culpability in this matter. Mr. Whetstone also resides—and has for years—in New York City, and he too has no meaningful connection to California. Therefore, the interest of justice and the convenience of parties and witnesses would be served by transferring this case.

But when, as here, Plaintiff files its case in the wrong court, 28 U.S.C. § 1406(a) authorizes that Court to dismiss the case outright.

It is appropriate for this Court to dismiss rather than transfer an action when a plaintiff has "committed an obvious error in filing [its] action in the wrong court, and thereby imposed

9 **Memorandum of Points & Authorities**
**11-CV0651 IEG JMA**

substantial unnecessary costs on both the defendant and the judicial system." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993) (affirming a dismissal for lack of personal jurisdiction).

In such a circumstance, it would not serve the interests of justice and judicial economy "simply to transfer [the] action to the proper court, with no cost" to Plaintiff. *Id.*; *Coté v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) (Posner, J.) (dismissing rather than transferring an action, even though the statute of limitations had run, because "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction").

Here, Plaintiff knew Mr. Tabora's address, not just his IP number. It knew the appropriate venue would be in the Southern District of New York rather than here.

Another reason to dismiss is a more practical one—because Plaintiff's repeated filing errors have made a mess of this case. The improperly filed Amended Complaint, the improper service and complete lack of service on the second Defendant, the lack of filing of a summons, the odd "withdrawal" afterward . . . all these issues would follow this monstrosity from San Diego to New York City and would taint the thing until its demise.

## CONCLUSION

For all of the above reasons, Defendant respectfully requests that the court dismisses this action.

Dated: August 16, 2011                          Respectfully submitted,

                                                     /s/ William Skinner
                                                  WILLIAM SKINNER (257139)
                                                  Attorney for Defendant
                                                  CARY TABORA