1  Marc J. Randazza, Esq., CA Bar 269535
   Randazza Legal Group
2  10620 S. Highlands Pkwy. #110-454
   Las Vegas, NV 89141
3  888-667-1113
   305-437-7662 (fax)
4  MJR@randazza.com

5
   Attorney for Plaintiff,
6  LIBERTY MEDIA HOLDINGS, LLC

7

8                 UNITED STATES DISTRICT COURT

9      SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

10  LIBERTY MEDIA HOLDINGS, LLC          )   Case No. 3:11-CV-00651-IEG -JMA
                                         )
11              Plaintiff,               )   **OPPOSITION TO MOTION TO DISMISS**
                                         )   **FOR LACK OF PERSONAL**
12        vs.                            )   **JURISDICTION AND IMPROPER VENUE**
                                         )
13                                       )   Judge: Hon. Irma E. Gonzalez
                                         )
14  CARY TABORA AND SCHULYER             )
    WHETSTONE,                           )
15                                       )
                Defendants.              )
16                                       )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTORITIES ......................................................................................................... ii

I. Introduction and Case History ............................................................................................ 1

II. The Court has Personal Jurisdiction Over the Defendant due to a Forum Selection Clause ....... 3

    A.   Mr. Tabora consented to the Terms & Conditions on the Plaintiff's Website, and the Terms & Conditions contained an enforceable Forum Selection Clause ..................... 3

    B.   Mr. Tabora Agreed to the Forum Selection Clause Freely and Voluntarily ................. 6

    C.   The enforcement of the Forum Selection Clause would not be unreasonable .............. 8

III. The Court has Personal Jurisdiction Over the Defendant Even Absent a Forum Selection Clause ................................................................................................................................ 10

    A.   The Facts Support Jurisdiction in San Diego .............................................................. 10

    B.   The Law Supports Jurisdiction in San Diego since the Defendant is alleged to have willfully infringed upon copyrights owned by a forum resident, and which the Defendant knew emanated from San Diego ............................................................... 11

    C.   Finding of Personal Jurisdiction Is Reasonable .......................................................... 14

IV. Alternate Relief ................................................................................................................. 19

    A.   The Plaintiff's right to file an Amended Complaint ................................................... 19

    B.   Jurisdictional Discovery .............................................................................................. 20

V. Conclusion ......................................................................................................................... 20

# TABLE OF AUTORITIES

*3DO Co. v. Poptop Software, Inc.*,
   1998 U.S. Dist. Lexis 21281(N.D.Cal. Oct. 27, 1998) ................................ 13

*A.V. ex rel. Vanderhye v. iParadigms*,
   LLC, 562 F.3d 630 (4th Cir. 2009*)* ................................................................ 6

*Am. Online, Inc. v. Superior Court*,
   90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) ....................................... 4

*Applied Waterproofing Tech., Inc. v. Am. Safety Indem. Co.*,
   2009 U.S. Dist. LEXIS 69845 (S.D. Cal. Aug. 10, 2009) ............................ 9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ............................................................ 12, 15

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) .................................................................. 11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................... 5, 15, 18

*Calder v. Jones*,
   465 U.S. 783 (1984) .................................................................................. 12

*Caruth v. Int'l Psychoanalytical Ass'n*,
   59 F.3d 126 (9th Cir. 1995) ................................................................ 16, 17

*Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*,
   106 F.3d 284 (9th Cir. 1997) ............................................................ 11-12, 18

*CompuServe Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) .................................................................... 14

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) ................................................................... 4-5

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) .................................................................... 13

*Costar Realty Info., Inc. v. Field*,
   612 F. Supp. 2d 660 (D. Md. 2009) ............................................................. 5

*Doe v. Project Fair Bid*,
   2011 U.S. Dist. LEXIS 89511 (W.D. Wash. 2011) ..................................... 5, 6

*Dominium Austin Partners, L.L.C. v. Emerson*,
   248 F.3d 720 (8th Cir. 2001) .................................................................... 18

*Feldman v. Google, Inc.*,
   513 F. Supp. 2d 229 (E.D. Pa. 2007) ........................................................... 5

*Feltner v. Columbia Pictures Television*,
   523 U.S. 340, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998*)* ......................... 12

*Fireman's Fund Ins. Co. V. M/V DSR Atlantic,*
   131 F.3d 1336 (9th Cir. 1998) ........................................................................ 8, 16

*Foman v. Davis,*
   371 U.S. 178 (1962) ............................................................................................ 19

*FTC v. Publ'g Clearing House, Inc.,*
   104 F.3d 1168 (9th Cir. 1997) ........................................................................... 15

*Gordy v. Daily News, L.P.,*
   95 F.3d 829 (9th Cir. 1996) ............................................................................... 17

*Haisten v. Grass Valley Med. Reimbursement,*
   784 F.2d 1392 (9th Cir. 1986) ........................................................................14-15

*Io Group, Inc. v. Pivitol, Inc.,*
   2004 U.S. Dist. LEXIS 6673 (N.D.Cal.) ....................................................... 13, 15

*Janel Russell Designs, Inc. v. Mendelson & Assocs.,*
   114 F. Supp. 2d 856 (D. Minn. 2000) ................................................................. 12

*Jones v. Dressel,*
   40 Colo. App. 459, 582 P.2d 1057 (Colo. App. 1978), *aff'd* 623 P.2d 370 (Colo. 1981) .............. 7

*Koresko v. RealNetworks, Inc.,*
   291 F. Supp. 2d 1157 (E.D. Cal. 2003) ........................................................... 6, 8-9

*M/S Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1, 12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ................................... 4, 8

*Marshall v. McCown Deleeuw & Co.,*
   391 F.Supp.2d 880 (D. Idaho 2005) .................................................................... 20

*Medicap Pharms., Inc. v. Faidley,*
   416 F. Supp. 2d 678 (S.D. Iowa 2006) .................................................................. 8

*Meier v. Midwest Rec. Clearinghouse, LLC,*
   2010 U.S. Dist. LEXIS 68949 (E.D. Cal. July 9, 2010) ......................................... 5

*Murphy v. Schneider Nat'l, Inc.,*
   362 F.3d 1133 (9th Cir. 2004) ......................................................................... 4, 8

*Myers v. Malley Law Offices,*
   238 F.3d 1068 (9th Cir. 2000) ........................................................................... 14

*Nat'l Equip. Rental, Ltd. v. Szukhent,*
   375 U.S. 311, 84 S. Ct. 411, 11 L. Ed. 2d 354 (1964) ........................................... 5

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) ........................................................................................... 20

*Panavision Int'l, L.P. v. Toppen,*
   141 F.3d 1316 (9th Cir. 1998) ................................................... 12, 13, 15, 16, 17

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,*
   741 F.2d 273 (9th Cir. 1984) ........................................................................... 4, 8

*Penguin Group, Inc. v. American Buddha,*
   609 F.3d 30, 95 U.S.P.Q.2d (BNA) 1217 (2d Cir. 2010)..............................11

*R.A. Arguenta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996)........................................................................4, 8

*Righthaven LLC v. South Coast Partners, Inc.,*
   2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011)................................12

*Roth v. Garcia Marquez,*
   942 F.2d 617 (9th Cir. 1991)......................................................................16

*Schoot v. United States,*
   664 F. Supp. 293 (N.D. Ill. 1987) ..............................................................11

*Segal v. Amazon.com, Inc.,*
   763 F. Supp. 2d 1367 (S.D. Fla. 2011).........................................................6

*Sher v. Johnson,*
   911 F.2d 1357 (9th Cir. 1990).....................................................................16

*Shroyer v. New Cingular Wireless Servs.,*
   498 F.3d 976 (9th Cir. 2007)......................................................................6-7

*Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*
   248 F. Supp. 2d 1140 (M.D. Fla. 2002) ........................................................6

*Sinatra v. National Enquirer, Inc.,*
   854 F.2d 1191 (9th Cir. 1988).....................................................................17

*Spence v U.S.,*
   629 F. Supp. 2d 1068 (E.D. Cal. 2009).........................................................7

*Swenson v. T-Mobile USA, Inc.,*
   415 F. Supp. 2d 1101 (S.D. Cal. 2006) .........................................................4

*Taylor v. Florida State Fair Auth.,*
   875 F. Supp. 812 (M.D. Fla. 1995) .........................................................19-20

*TradeComet.com, LLC v. Google, Inc.,*
   693 F. Supp. 2d 370 (S.D.N.Y. 2010) ...........................................................5

*Tunkl v. Regents of Univ. of Cal.,*
   60 Cal. 2d 92 (Cal. 1963)..............................................................................7

*Via Viente Taiwan, L.P. v. United Parcel Service, Inc.,*
   2009 WL 398729 (E.D. Tex. Feb. 17, 2009) .................................................5

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
   556 F.2d 406 (9th Cir. 1977).......................................................................20

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006).....................................................................13

**TO THE HONORABLE JUDGE OF SAID COURT**

    **LIBERTY MEDIA HOLDINGS, L.L.C.** (hereinafter, Plaintiff "Liberty") hereby files this Opposition to the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.  (ECF 15).

**I.**    **INTRODUCTION AND CASE HISTORY**

    As opposing counsel notes in the Motion to Dismiss (ECF 15) the undersigned committed procedural errors in this case. The undersigned informed his opposing counsel of the errors and his plans to take corrective action.  See **Exhibit A**.  Unfortunately, the defense considered these errors and corrective actions to be an opportunity to increase the cost of this litigation.  Although the Motion is improperly brought, the Plaintiff takes the position that it is substantially un-meritorious, and thus should be denied by this Honorable Court.

    The initial contact between the parties in this case was between the undersigned and Mr. Tabora himself.  See **Exhibit B**.  However, Mr. Tabora then retained Attorney Skinner.  As early as May 16, 2011, the undersigned informed Attorney Skinner that an Amended Complaint was in the works.  See **Exhibit C**.  However, the Plaintiff delayed filing the Amended Complaint because good faith negotiations to settle the case were underway.[1]  At every juncture, the undersigned made it clear that there would be an Amended Complaint, and that extensions would be granted liberally.  On May 19, 2011, Attorney Skinner sent an email declining to so much as file a stipulation to extend the time in which Mr. Tabora's answer would be due, out of recognition that an Amended Complaint was imminent.  See **Exhibit D**.  At that point, communications broke down, as Attorney Skinner had other matters to attend to.  See **Exhibit E**.

---

[1] At least the Plaintiff believed they were good faith negotiations; the Defendant seems to have revealed contrary information.

1

On July 7, 2011, the undersigned offered to transmit a copy of the Amended Complaint for the Defendant's consideration, in order to avoid the need for it to be filed.  See Declaration of Marc J. Randazza at ¶ 4-5 (actual email not submitted to the Court due to the fact that it contains settlement privileged discussions.   See F.R.E. 408).   On July 13, 2011, Attorney Skinner proposed that settlement discussions be postponed.  See **Exhibit F.**  However, the Plaintiff grew impatient, and thus the undersigned transmitted a settlement proposal to Attorney Skinner on July 15, 2011; Attorney Skinner did not acknowledge transmitting the settlement offer to his client until July 19, 2011.  See **Exhibit G**.  At that point, as the Defense triumphantly points out, the Plaintiff filed its amended complaint 110 days after filing its initial complaint.  (ECF 9-2 at 2).  Attorney Skinner was immediately notified and provided with a courtesy copy.  See **Exhibit H**.

The Defense seems to rely heavily upon the undersigned's procedural error and the 110 day delay in filing the Amended Complaint.  However, the defense omits the fact that the delay was almost entirely at the behest of the Defense, because of the Defense, or out of courtesy provided to the Defense.  The undersigned can not deny his procedural errors.  However, these errors were minor, prejudicial to nobody, and were corrected immediately upon discovery.  (ECF 6; 7).  On the other hand, the maneuvering of the Defendant seems to have no reasonable explanation, except a desire to increase the cost of this litigation for both parties.

Even after the unreasonable delays in this case, the undersigned erred on the side of professionalism and courtesy, asking Attorney Skinner if he had entered a notice of appearance in the case; Skinner replied that he had not heard from his client in weeks, and that the undersigned should avoid further filings with the Court.  See **Exhibit I**.  As late as August 8, 2011, Attorney Skinner would not even so much as confirm that he represented Mr. Tabora.  See **Exhibit J**.  On August 8, 2011, the undersigned informed Attorney Skinner and Mr. Tabora that

in light of the lack of communication no further courtesies could be extended.  However, while the undersigned is usually true to his word, he is not uncomfortable breaking a promise to be rigid when it means extending additional courtesy.   On August 12, 2011, the undersigned transmitted a letter to both Mr. Tabora and Attorney Skinner that explained that Mr. Tabora's answer to the complaint was due on June 8, 2011, but the Plaintiff would not seek a default if Mr. Tabora would have an attorney merely file a notice of appearance by August 17, 2011.  See **Exhibit K**.  At 4:16 PM on August 16, Attorney Skinner filed a notice of appearance.  (ECF 8) At 5:30 PM, the undersigned sent Attorney Skinner a request that he stipulate to the filing of an amended complaint in this case.  See **Exhibit A**.  However, Attorney Skinner simply filed the instant motion at 11:57 PM on the same day  (ECF 9).  In doing so, he made an unfortunate, but clear, material misrepresentation that the Plaintiff has no interest in pursuing an Amended Complaint (ECF 9-2 at 3).

The Motion should be denied.  The "evidence" attached to it has no persuasive value. The legal arguments in it are unsupportable. At the very most, if the Court finds anything in the Motion to be worthy of support, the strongest relief that should be granted is the Plaintiff should have an opportunity to file its Amended complaint – a document which (as shown above) the Defendant had ample notice of.   Even if the initial complaint is subject to dismissal, the Amended complaint certainly is not.  Finally, if the Court is inclined to consider the Defendant's arguments against jurisdiction to have any merit, even when applied to the Amended Complaint, the Plaintiff should have a right to conduct jurisdictional discovery.

## II.   THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT DUE TO A FORUM SELECTION CLAUSE

### A.   Mr. Tabora consented to the Terms & Conditions on the Plaintiff's Website, and the Terms & Conditions contained an enforceable Forum Selection Clause.

Mr. Tabora was a member of the Corbin Fisher website for two years, from October 27,

2008 until October 17, 2010.   Dunlap Dec. ¶ 5.   All members are required to agree to the Corbinfisher.com Terms and Conditions (hereinafter "T&Cs").[2] The T&Cs contain a clear and expansive forum selection clause that provides that any disputes between the parties must be brought in San Diego.   See **Exhibit L**; see also Dunalp Dec. ¶ 8-9.   "Forum selection clauses 'should be respected as the expressed intent of the parties.' " *Swenson v. T-Mobile USA, Inc.,* 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006) (quoting *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir. 1984)).   They are presumptively valid, and thus "should be honored 'absent some compelling and countervailing reason.' " *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).   A forum selection clause is valid unless:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*R.A. Arguenta v. Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996) (internal quotation marks and citations omitted).   "The party challenging the clause bears a 'heavy burden of proof.'" *Murphy,* 362 F.3d at 1140 (quoting *M/S Bremen,* 407 U.S. at 17). "California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable." *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 11, 108 Cal. Rptr. 2d 699 (2001).   A valid forum selection clause "may act as a waiver to objections to personal jurisdiction." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273,

---

[2] Current version found at http://www.corbinfisher.com/CFSplash.aspx; version in effect when Tabora signed up for services attached as Exhibit L.

281 n. 11 (4th Cir. 2009) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315-16, 84

S. Ct. 411, 11 L. Ed. 2d 354 (1964)). In fact, a forum selection clause, "standing alone, is enough

to confer personal jurisdiction on a nonresident defendant." *Costar Realty Info., Inc. v. Field*, 612

F. Supp. 2d 660, 668 (D. Md. 2009) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472

n. 14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The forum selection clause states:  "**The sum of this paragraph is that any and all**

**disputes must be, without exception, brought to court and litigated in San Diego County,**

**California.**" See **Exhibit L** at ¶ 11.5.1.  The forum selection clause's language precludes the

Plaintiff from bringing suit against Mr. Tabora elsewhere. If the Plaintiff did, Tabora would have

had an even more compelling case for dismissal or transfer.  See *TradeComet.com, LLC v.*

*Google, Inc*., 693 F. Supp. 2d 370 (S.D.N.Y. 2010) (Plaintiff brought case in S.D.N.Y. despite

forum selection clause calling for jurisdiction in California, and case was dismissed for improper

venue); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007) (forum selection clause

calling for California jurisdiction resulted in successful motion to transfer; *Via Viente Taiwan,*

*L.P. v. United Parcel Service, Inc.,* 2009 WL 398729 (E.D. Tex. Feb. 17, 2009); *Doe v. Project*

*Fair Bid*, 2011 U.S. Dist. LEXIS 89511 (W.D. Wash. 2011); *Meier v. Midwest Rec.*

*Clearinghouse, LLC*, 2010 U.S. Dist. LEXIS 68949 (E.D. Cal. July 9, 2010) (plaintiff brought

case in E.D. Calif. despite forum selection clause in online agreement calling for Minnesota

jurisdiction.  Case dismissed for improper venue).

Thus, it would have been nonsensical to bring a claim in New York against a Floridian

based upon a dispute governed by a contract with California choice of law clause and a

California forum selection clause.  The language of the forum selection clause is so expansive

that it applies to any and all disputes *whatsoever* that might arise between the parties and as

shown above, the case would have been subject to dismissal if brought elsewhere. However, the

5

instant dispute is about infringement upon the Plaintiff's copyright, which is specifically prohibited in the T&Cs at ¶ 5.2.2 and ¶ 5.2.3.  Therefore, the Defendant's characterization of this case as "unrelated to dealings envisioned by the contract"  (ECF 9-2 p.6) is inappropriate.  This dispute was heavily contemplated by the T&Cs.  The T&Cs clearly call for California law, and California courts are more familiar with California law than New York courts.  See *Project Fair Bid*, 2011 U.S. Dist. LEXIS 89511 (since forum selection clause and choice of law were California, the court transferred the case from W.D. Wash. to N.D. Cal.).  This is the proper place for this dispute.

### B.    Mr. Tabora Agreed to the Forum Selection Clause Freely and Voluntarily

The T&Cs are a "click wrap agreement."  These kinds of agreements require the user to affirm that he agrees to the terms before progressing forward, and are regularly upheld.  See, e.g., *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162-63 (E.D. Cal. 2003) (finding forum selection clause enforceable where plaintiff clicked once on a button marked "I agree."); *Project Fair Bid*, 2011 U.S. Dist. LEXIS 89511; *Siedle v. Nat'l Ass'n of Sec. Dealers, Inc*. 248 F. Supp. 2d 1140 (M.D. Fla. 2002) (upholding the validity of a click wrap agreement); *Segal v. Amazon.com, Inc.,* 763 F. Supp. 2d 1367 (S.D. Fla. 2011) (click wrap agreement forum selection clause upheld); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) (finding that the parties entered into a valid contract when the plaintiffs clicked "I Agree" to a click wrap agreement on one occasion).

The Defense characterizes these T&Cs as a "take it or leave it" agreement and a "contract of adhesion between parties with unequal bargaining power.  (ECF 9-2 p.6).  The Defense's characterization of the T&Cs is not accurate.  "Under California law, [a] contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 983 (9th Cir.

2007).  However, the T&Cs provide a full opportunity to negotiate the terms at Paragraph 1.4.

> 1.4    You may not unilaterally disregard any portion of this Agreement. However, if there is a particular portion of this Agreement that You wish to avoid, You may contact us to negotiate a separate agreement BEFORE You use Our Website(s). We do not guarantee that such negotiations will be successful. Nevertheless, if You wish to discuss your own personalized Agreement, please contact us or have Your attorney do so.

Paragraph 1.4 of the T&Cs presented Mr. Tabora with an opportunity to negotiate the terms.  He elected not to.  Therefore, the T&Cs are the precise opposite of a contract of adhesion. Mr. Tabora waived any right to complain about their terms when he agreed to the terms, signed up for the site, yet decided not to contact the Plaintiff to negotiate separate terms, as was his stated right under Paragraph 1.4 of the T&Cs.

Even in the absence of this "opportunity to negotiate" provision, it is difficult to understand how this could be considered a "contract of adhesion" given the subject matter of the T&Cs.  When a contract is for services that can are non-essential, the contract is not an adhesion contract. See *Spence v U.S.*, 629 F. Supp. 2d 1068, 1083 (E.D. Cal. 2009) (finding that a release that must be entered into to engage in bicycling on federal roadways is not an adhesion contract). See also *Jones v. Dressel*, 40 Colo. App. 459, 582 P.2d 1057 (Colo. App. 1978), *aff'd* 623 P.2d 370 (Colo. 1981) (skydiving liability waiver not a contract of adhesion; services could be obtained elsewhere, not essential to purchase services from that particular provider).  Compare *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92 (Cal. 1963) (invalid contract of adhesion to require patient at a hospital to sign a negligence waiver).

The agreement did not govern medical care or employment; in that context a party might very well have a devil's bargain before him, and will be in no position to decline terms that he finds distasteful.  However, this agreement was for a subscription to a pornographic website.  It is unthinkable that Mr. Tabora was in such urgent need of pornography that he was powerless to

7

click over to another website with more palatable terms.  Even if that was the case, was Mr. Tabora's need for pornography so essential that he was powerless to contact the Plaintiff to exercise his rights under Paragraph 1.4? Mr. Tabora freely entered into this agreement; the agreement was for non-essential services; the agreement specifically provided an option for modification, which Mr. Tabora declined. It is unsupportable to call this a contract of adhesion. Although Mr. Tabora may find this suit to be inconveniently located, this is not grounds to invalidate the forum selection clause.  See *Fireman's Fund Ins. Co. V. M/V DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1998)  (litigating in Korea, though a "serious inconvenience," was not sufficient to invalidate a forum-selection clause). See also *Koresko,* 291 F. Supp. 2d at 1162-63 (clause requiring plaintiff to bring suit in Washington State upheld).

C.      **The enforcement of the Forum Selection Clause would not be unreasonable.**

Under *M/S Bremen v. Zapata Offshore Co.*, "forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid."  The party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust."  *Murphy* 362 F.3d at 1140; *Medicap Pharms., Inc. v. Faidley*, 416 F. Supp. 2d 678, 683 (S.D. Iowa 2006) ("The party resisting enforcement of the clause bears a heavy burden in convincing the Court that it should not be held to its bargain.")

There can be no serious allegation that the forum selection clause was the result of fraud, undue influence, or unequal bargaining power. See Sect. II.B. Supra.  Therefore, Mr. Tabora seems limited to arguing that it would be inconvenient or contrary to public policy to enforce the agreement.  To establish that the clause is unreasonable for inconvenience, Tabora bears the "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta*, 87 F.3d at 325 (quoting *Pelleport*, 741 F.2d at 281); *Fireman's* 523 U.S. at 1157; *Koresko* 291 F. Supp. 2d at

1162-63.[3]

Mr. Tabora may find litigation in this District to be inconvenient, but parties faced with far greater degrees of inconvenience found this argument to be unavailing.  As this very court held:

> Generally, even when a forum selection clause requires a litigant seek relief in a foreign court, courts have held such requirement does not deprive the litigant of his day in court so as to render the clause unenforceable. *Bremen*, 407 U.S. at 19 (upholding clause required litigation of claims in London); *Argueta*, 87 F.3d at 325 (upholding clause required litigation of claims in Mexico); *Richards*, 135 F.3d at 1296 (upholding clause required litigation of claims in England); *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336 (9th Cir. 1997) (upholding clause requiring litigation of claims in Korea).

*Applied Waterproofing Tech., Inc. v. Am. Safety Indem. Co.*, 2009 U.S. Dist. LEXIS 69845, 14-15 (S.D. Cal. Aug. 10, 2009)

With regard to public policy considerations, Mr. Tabora has made no showing that New York has a substantially greater relationship to the parties or the transaction than California.  When Mr. Tabora became a site member, he was a Florida resident.  He arguably still is.  The Plaintiff and its witnesses are in San Diego.  The forum selection clause can not be shown to be against any articulable public policy.

\\

\\

\\

\\

---

[3] Furthermore, as the Plaintiff intends to add Mr. Whetstone as a defendant in this case, Mr. Whetstone will already be traveling to San Diego to defend himself.

9

### III. THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT EVEN ABSENT A FORUM SELECTION CAUSE

The instant motion should be denied solely based upon the forum selection clause. However, the following reasons are presented as an alternative basis for denial.

### A.     The Facts Support Jurisdiction in San Diego

The Defense claims, in support of his Motion to Dismiss, that this action does not belong in San Diego, because only his attorney is in San Diego.   However, the Defense makes statements about which it has no personal knowledge and ignores facts that are easily ascertainable.  The Defense states "Plaintiff's current San Diego address at 302 Washington St. #321 is a mailbox at a UPS Store." (ECF 9-2 p.2).  This is not disputed.  However, Mr. Skinner, the declarant supporting this statement, might have been well served during his investigation to walk across the intersection of Washington St. and Fourth Avenue to 3969 Fourth Avenue, Suite 300.  This is the address that is prominently displayed at the beginning of 144 of the Plaintiff's movies that Tabora downloaded over a two-year period. Dillon Dec ¶ 6.  It is also the address displayed in the opening of the movie giving rise to this case.  Dillon Dec ¶ 6.  Had Mr. Skinner expanded his investigation to this logical extent, he would have found that address lies a mere 495 feet away from the UPS store.   See **Exhibit N**; Mancini Dec ¶ 6.  At that address, the Plaintiff has 5,000 square feet of office space there, where the Plaintiff employs John Mancini, who is the employee responsible for documenting the Plaintiff's copyrighted works, filing their copyright registration certificates, and maintaining copyright registration files.  Mancini Dec ¶ 4-5.  Arguably, Mr. Mancini is the most important witness in this case and he is located in the Plaintiff's San Diego facility.  Furthermore, Mr. Skinner would find Dr. Henry Leonard there. Dr. Leonard is the Plaintiff's in house CPA, who will testify about the financial damage to the Plaintiff caused by piracy.  Leonard Dec ¶ 4-5.  In short, key witnesses, records, and facilities are in San Diego despite Mr. Skinner's belief that he unearthed a smoking jurisdictional gun with his

revelation that the Plaintiff prefers to receive mail and packages at a UPS Store.  Leonard Dec ¶ 4.; Mancini Dec ¶ 6.

Mr. Skinner is correct that the undersigned and many of the Plaintiff's employees have relocated to Las Vegas, Nevada.  However, the relevance of this information is unclear.  Jurisdiction can not be defeated by a party leaving a jurisdiction after the case begins.  See, e.g., *Schoot v. United States,* 664 F. Supp. 293, 295 (N.D. Ill. 1987).  The jurisdictional facts are fixed where they occur, or at least at the time of filing.  As discussed above, the Plaintiff was contractually obligated to file this case in San Diego.  Furthermore, when the case was filed, there was no indication that the Plaintiff would be opening a facility in Las Vegas.  At the time this case was filed, and at the time the harm was suffered, the aggrieved party was located in San Diego.  Leonard Dec. ¶ 3-4.  Furthermore, Mr. Tabora can not credibly argue that he was unaware of the fact that the Plaintiff was in San Diego.  As noted above, Mr. Tabora was a member of the Plaintiff's website for two years.  Dunlap Dec. ¶ 5.  During that time, he downloaded 157 of the Plaintiff's movies.  Of these 157 films, 144 of them begin with a title screen that shows that the Plaintiff is located in San Diego, California.  See Dillon Dec. ¶ 6.  The film at issue in this case had the same title screen.  Dillon Dec. ¶ 6.

**B.      The Law Supports Jurisdiction in San Diego since the Defendant is alleged to have willfully infringed upon copyrights owned by a forum resident, and which the Defendant knew emanated from San Diego.**

It is well-established that a copyright infringement plaintiff has the privilege of bringing suit in its home jurisdiction, and need not chase every infringer to each and every far flung jurisdiction. See *Penguin Group, Inc. v. American Buddha,* 609 F.3d 30, 95 U.S.P.Q.2d (BNA) 1217 (2d Cir. 2010) (jurisdiction is proper where the copyright owner is located).  The 9th Circuit embraces this theory.  See *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010); *Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.,* 106 F.3d 284,

289 (9th Cir. 1997) ("Columbia alleged, and the district court found, that Feltner willfully infringed copyrights owned by Columbia,  which, as Feltner knew, had its principal place of business in the Central District. This fact alone is sufficient to satisfy the 'purposeful availment' requirement."); *Righthaven LLC v. South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011) (same).

Copyright infringement is an intentional tort. See *Columbia*, 106 F.3d at 289 (9th Cir. 1997), overruled on other grounds by *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998*); Janel Russell Designs, Inc. v. Mendelson & Assocs.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000). Infringement upon copyrights owned by a known forum resident is alone enough to establish "purposeful availment" under the jurisdictional analysis. See *Columbia*, 106 F.3d at 289; *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  An individual subjects himself to personal jurisdiction in a state where he has engaged in intentional acts, which he knew would cause harm in the forum state.  *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) ("In tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state.").

In this case, the infringement was expressly aimed at San Diego.  The majority of work at issue clearly came from a San Diego publisher, as the opening screen on the film reveals this fact.  See Dillon Dec. ¶ 6.  Conduct is "expressly aimed" when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Mr. Tabora had knowledge of the Plaintiff's location.  Even if the court does not support the T&Cs forum selection clause as controlling this case, it must see that the T&Cs make a clear disclosure of the Plaintiff's location, thus giving the Defendant fair notice of where the harm would be affected in the event that a tort was committed against the Plaintiff.  Furthermore, the

infringed upon film contained a clear statement of the Plaintiff's location, see Dillon Dec. ¶ 6, as did 144 of the films that Tabora downloaded during his two year relationship with the Plaintiff. Dillon Dec. ¶ 6; Dunlap Dec. ¶ 5.

The Effects Doctrine holds that personal jurisdiction can be based on "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered -- and which the defendant knows is likely to be suffered -- in the forum state." *Toppen* 141 F.3d at 1321 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993).  See also, *Io Group, Inc. v. Pivitol, Inc*., 2004 U.S. Dist. LEXIS 6673*16 (N.D.Cal.).

In *Toeppen*, the Ninth Circuit specifically stated that, "[b]ecause the defendant's tortious behavior was knowingly aimed at a company whose principal place of business was in California, and whose industry -- the entertainment industry -- was primarily located in California, defendant's conduct was likely to have an effect in the forum state.  As defendant knew his actions were likely to cause harm in California, under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction was satisfied." *Toeppen* at 1322.   Courts have applied the same principle in the copyright infringement context. *3DO Co. v. Poptop Software, Inc.*, 1998 U.S. Dist. Lexis 21281(N.D.Cal. Oct. 27, 1998), citing *Toeppen*, 141 F3d at 1322; *Pivitol,* 2004 U.S. Dist. LEXIS at *16 (N.D.Cal). See also *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

In this matter, it is alleged that the Defendant, intentionally reproduced and distributed works belonging to plaintiff by and through BitTorrent protocol.  The Defendant should have known that this act would have had an effect in California.  It is common knowledge within the adult industry that California is the epicenter of adult video production and that the majority of adult production companies operate from within California.  The Defendant joined the Plaintiff's website, subject to a clear forum selection clause stating that the Plaintiff was in California.

13

After doing so, the Defendant downloaded no fewer than 144 films which began with a title screen declaring that the Plaintiff was in San Diego, California.

Defendant is alleged to have knowingly infringed Plaintiff's works, understanding that the negative effect of such infringement would be suffered in California.  If the Plaintiff would not have been injured, but for the Defendants forum-related conduct, then jurisdiction is proper. *Myers v. Malley Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000).

Plaintiff's claims of copyright infringement arise directly from defendant's forum-related activities as described above.  Defendant's actions involving the reproduction, distribution and public display of copyrighted works.

**C.    Finding of Personal Jurisdiction Is Reasonable.**

This Court is asked to analyze "reasonableness" under a different standard in this section than the standard used to analyze the forum selection clause.  Under that standard, the Defendant bears an insurmountable burden.  See Sect IIC supra.  Under this section, the standard if lower, but the Plaintiff can still show that the exercise of personal jurisdiction to the court would be reasonable.

Once a court finds "the first two elements of a prima facie case - purposeful availment and a cause of action arising from the defendant's contacts with the forum state - then an inference arises that this third factor is present." *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996).  For jurisdiction to be reasonable, it must comport with "fair play and substantial justice". *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  However, the burden is upon the Defendant to prove unreasonableness. "[T]here is a presumption of reasonableness upon a showing that the defendant purposefully directed his actions at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." *Haisten v. Grass Valley*

14

*Med. Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986) (citing *Burger King*, 471 U.S. at 477) (emphasis in original). See also, *Pivotal* at *8 ("Defendant bears the burden of demonstrating unreasonableness and must put on a compelling case") (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000) and *Burger King,* 471 U.S. at 476-77. The Defendant has not presented any evidence of unreasonableness and thus could not meet this burden (and this burden is heightened under the forum selection clause to which the Defendant agreed).  The only evidence provided by the Defendant is the self-serving declaration of the Defendant where he makes many conclusory legal statements, which are of no persuasive or evidentiary value.  See *FTC v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1170-71 (9th Cir. 1997) (holding that the president of a company cannot raise a genuine issue of material fact that she was president in name only by introducing "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence").

In *Burger King* the court set forth seven factors to examine when determining the Constitutional reasonableness of personal jurisdiction:  (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  All but the last fact weigh in favor of finding jurisdiction and this analysis is only relevant if the Court finds the forum selection clause to not apply.

**Purposeful Interjection  -** The Defendant has purposefully interjected himself into this forum for all the reasons set forth in detail in the discussion relating to limited jurisdiction *supra*. This factor weighs heavily in favor of finding that personal jurisdiction is reasonable.

15

**Burden on Defendant of Defending in the Forum -** "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Toppen* 141 F.3d at 1120; see also *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995) (citing *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir. 1991)). "In this era of fax machines and discount air travel requiring [defendants] to litigate in California is not constitutionally unreasonable." *Panavision,* 938 F. Supp. at 622 (quoting *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir. 1990)).  This is truer than ever with electronic mail and e-filing now available.  Moreover, Mr. Tabora seems to live a bi-state life, where he is registered to vote in Florida, has a driver's license in Florida, and continues to maintain a Florida phone number.  Dillon Dec. ¶ 4.  Therefore, he cannot claim that he simply lives a New York only life, and is no stranger to interstate travel.

Mr. Tabora has already retained counsel in California, and despite his statement that he will be calling Mr. Whetstone, an apparent resident of New York, as a witness, he does not consider the fact that the Plaintiff's most important fact witnesses will be in San Diego.  Mr. Mancini is in charge of registering the Plaintiff's copyrights.  Mancini Dec. ¶ 4-5.  Mr. Henry Leonard is the Plaintiff's in-house CPA, who will be the fact witness discussing damages. Leonard Dec. ¶ 4-5.  Mr. Tabora will be required to depose these witnesses in San Diego. Fed. R. Civ. P. 45(b)(2)(B).  Therefore, he will actually need to hire two lawyers if he wishes to adequately defend this case in New York – one to defend him in New York and Mr. Skinner (presumably) to handle San Diego depositions. It would be no more inconvenient for Mr. Tabora to defend this action in California than in New York and in many ways, it would be more so. Even so, mere inconvenience is not sufficient to move this action from the Court.  See *Fireman's Fund*, 131 F.3d at 1338.  This factor weighs in favor of finding personal jurisdiction.

**Sovereignty -** The exercise of jurisdiction by a federal court in California does not implicate sovereignty concerns of New York.  This factor weighs in favor of finding personal jurisdiction.

**Forum State's Interest  -** "California maintains a strong interest in providing an effective means of redress for its residents tortuously injured." *Gordy v. Daily News, L.P.,* 95 F.3d 829, 836 (9th Cir. 1996) (citing *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1200 (9th Cir. 1988)).  Plaintiff is a resident of California and therefore this factor also weighs in favor of finding personal jurisdiction.  Adding further significance is the fact that the industries at issue in this matter are based in California – the adult entertainment industry and the computer technology industry. *Cf. Toppen* 141 F.3d at 1322 (Defendant should know intentional acts against an industry based in California could result in litigation in California).  Furthermore, the T&Cs clearly require disputes to be decided according to California law.

**Efficient Resolution -** "This factor focuses on the location of the evidence and witnesses."  *Toppen* 141 F.3d at 1521, citing *Caruth,* 59 F.3d at 129.  In this matter the vast majority of witnesses and evidence are located in San Diego.  The Plaintiff's key employees and fact witnesses are located here.  The only obvious non-party witness outside of Southern California is Mr. Whetstone, who Mr. Tabora claims he will call as a witness in this case, but there is no way to know this for certain.

**Convenient & Effective Relief for Plaintiff -** Plaintiff elected to bring this matter in California, to be represented by its in house counsel in order to keep litigation costs down for both parties while focusing on settlement.  Should the parties litigate in New York, plaintiff will be required to hire New York counsel at considerable additional expense, thereby driving up costs and decreasing settlement opportunities.  In the event that the case is litigated in Florida,

17

there will be additional local counsel costs or travel costs.  This factor also weighs in favor of finding personal jurisdiction to be reasonable.

**Alternative Forum –** No alternate forum would be proper as there is a clear forum selection clause in play to which both parties agreed.

As a preliminary matter, the forum selection clause analysis is somewhat controlling in the due process analysis.  "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); see also *Burger King*, 471 U.S. at 472 n. 14 ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court. For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." (internal quotation omitted)).

Mr. Tabora had the right and ability to negotiate  the terms of the T&Cs, and if San Diego was an unreasonable jurisdiction for him, he had an opportunity to bring that to the Plaintiffs attention.  He did not, but he _did_ agree to submit to jurisdiction in San Diego.  Accordingly, even in the absence of a finding that the forum selection clause controls the outcome of this motion, Tabora's assent to it is evidence that he waived his right to claim that jurisdiction in San Diego is unreasonable.

Defendant is subject to limited jurisdiction in the state of California because 1) it took actions that purposefully availed itself of the privilege of conducting activities in California, 2) plaintiff's claims arose from the Defendant's activity aimed toward the state, and 3) jurisdiction is constitutionally reasonable.

The Venue Argument is subsumed into the personal jurisdiction argument.  The Plaintiff has shown that jurisdiction would be proper in the Southern District of California if that District were a separate state.  Because Tabora would be amenable to personal jurisdiction in the Southern District if the District were a separate state, venue is proper under 28 U.S.C. § 1400(a). *Columbia*, 106 F.3d at 290.

## IV.   ALTERNATE RELIEF

### A.     The Plaintiff's right to file an Amended Complaint

Although the Defendant has filed a responsive pleading, it can be described in no other way as an attempt to short-circuit the Plaintiff's openly-stated intent to file an Amended Complaint, which was only delayed out of courtesy to the Defendant.  The Defendant has had a copy of the Amended Complaint since May.  Therefore, if he claims any prejudice in the court giving leave to file the attached amended complaint, such prejudice should be seen for what it is – self inflicted.  Furthermore, the proposed new defendant has not yet been served with the initial complaint, and thus no prejudice can be claimed by him.  The Second Amended Complaint is being provided to add an additional Defendant to this action and to conform to new evidence in the record.

A decision whether to grant or deny a motion for leave to file an amended complaint is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under Fed. R. Civ. P. 15(a) leave to amend "shall be freely given when justice so requires." Accordingly, there must be a "justifying reason" for a court to deny leave to amend.  *Id*. at 182. Because of the liberal policy allowing amendments embodied in Rule 15(a), "a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile."  *Taylor v. Florida State Fair Auth.*, 875 F. Supp. 812, 814

(M.D. Fla. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Clearly there are no justifying reasons to deny leave to amend.  No other party has appeared in this case, and thus no other party could oppose.

**B.    Jurisdictional Discovery**

Although discovery is generally not permitted before the parties have conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Rule 26(d) provides that parties may be permitted to engage in discovery before that time when authorized by the rules or by court order. Fed.R.Civ.P. 26(d) (Dec. 1, 2007).   Rule 26(b)(1) of the Federal Rules provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense ..." Fed. R. Civ. P. 26(b)(1). Therefore, the court may permit jurisdictional discovery before a 26(f) conference. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Such discovery is available to discover facts bearing on issues of jurisdiction. *Oppenheimer Funds*, 437 U.S. at 350-351. " 'Where pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary' courts should allow for discovery." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 (9th Cir. 1977); *Marshall v. McCown Deleeuw & Co.*, 391 F.Supp.2d 880, 882 (D. Idaho 2005).

**V.   CONCLUSION**

The Plaintiff has shown that the Defendant agreed to a forum selection clause, which terminates his jurisdictional arguments.

In the alternative, even if the Defendant had not agreed to the forum selection clause, he would be subject to specific jurisdiction in this state under the effects test.

Even if neither were true, the Plaintiff has shown a right to file an amended complaint and/or to conduct jurisdictional discovery.

For the reasons stated above, the Court should deny the Defendant's motion.  If the Court does not deny it in its entirety, it should grant the Plaintiff leave to amend and leave to conduct jurisdictional discovery.


Date: September 6, 2011.                              s/ Marc J. Randazza
                                                     Marc J. Randazza, SBN 269535
                                                     Randazza Legal Group
                                                     10620 S. Highlands Pkwy. #110-454
                                                     Las Vegas, NV 89141
                                                     888-667-1113
                                                     305-437-7662 (fax)
                                                     MJR@randazza.com

21