WILLIAM SKINNER (SBN 257139)
2667 Camino Del Rio South
Suite 100B
San Diego, CA 92108
Phone: (800) 659-5937
Fax:    (800) 601-9076

Attorney for Defendant CARY TABORA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS LLC,<br>A Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CARY TABORA, et al.<br><br>Defendants. | Case No. 11-CV0651 IEG JMA<br><br>**DEFENDANT CARY TABORA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Date:         December 19, 2011<br>Time:         10:30 AM<br>Courtroom:  1<br>Judge:        Hon. Irma E. Gonzalez |

## INTRODUCTION & PROCEDURAL BACKGROUND

This is a motion for dismissal based upon lack of personal jurisdiction and improper venue under Fed. R. Civ. P. 12(b)(2) and (3).

On March 31, 2011 Plaintiff Liberty Media Holdings brought this suit against Defendant Cary Tabora. After fruitless negotiations with Mr. Tabora, Plaintiff amended its complaint to include a second defendant, Mr. Whetstone.

1    However, Plaintiff was untimely with its amended complaint and, upon realizing the
2 error, asked the court for permission to withdraw it.  Shortly thereafter, Mr. Tabora filed a
3 motion to dismiss the case based upon lack of personal jurisdiction and improper venue.  In a
4 combined order [Doc. No. 17], the court granted Plaintiff's motion to withdraw its First
5 Amended Complaint and also granted Mr. Tabora's motion to dismiss the initial complaint
6 due to lack of personal jurisdiction.  The court did not rule upon whether venue was
7 appropriate or not.
8    Plaintiff has now filed a Second Amended Complaint in the hopes that it can patch up
9 its allegations in such a way that they will survive another motion to dismiss.  But these hopes
10 are in vain for the reasons articulated herein.

## ARGUMENT

### I. THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

So as to avoid a lengthy rehashing of many of the points brought up in Mr. Tabora's first motion to dismiss, we will quote when necessary from the court's accurate and succinct analysis of the situation as set forth in its order to dismiss the first complaint. [Doc. No. 17]

**A. Plaintiff Does Not Assert General Personal Jurisdiction**

Regarding general personal jurisdiction, the court wrote in its order: "Here, Plaintiff does not argue that the Court has general jurisdiction over Defendant. Therefore, the only issue is whether the Court has specific jurisdiction over Defendant." [Doc. No. 17 at 3.]  In its second amended complaint, Plaintiff does not assert that there is general personal jurisdiction either, so the proper analysis is still one of specific personal jurisdiction.

## B. There is No Specific Personal Jurisdiction Either

What follows is a quick summary of the substantive law on specific personal jurisdiction, as stated by the Court in its first order to dismiss [Doc. No. 17]:

The first prong of the three-part Schwarzenegger test to determine whether a court has personal jurisdiction looks at whether Defendant "purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

Courts evaluate "purposeful direction using the three-part 'Calder-effects' test," from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted).

The first element is easily satisfied in a copyright case. The second element of the Calder test "requires that the defendant's conduct be expressly aimed at the forum." Brayton Purcell, 606 F.3d at 1129. And the final element requires that "[Defendant's] conduct caused harm that it knew was likely to be suffered in the forum." Id. at 1131.

**1. Plaintiff's forum selection clause argument has not changed, dismissal stands**

As was discussed in the Court's prior order dismissing the original complaint [Doc. No. 17], Plaintiff alleged that the court had personal jurisdiction over Mr. Tabora due to a forum selection clause on its web site terms of service. But as the court correctly pointed out, the terms of service of the use of the website were not applicable to the alleged distribution of

1  a DVD, since the DVD was not able to be downloaded from the web site and in general had
2  nothing to do with the web site or its terms of service agreement.

3  Plaintiff has not alleged in its Second Amended Complaint any additional facts in
4  support of its claim that a forum selection clause controls this case. Therefore, the court's
5  prior rationale for dismissal of the original complaint on this ground must still hold true for
6  this Second Amended Complaint.

**2. Plaintiff's allegations as to Mr. Tabora's potential knowledge of its corporate whereabouts are not enough to confer personal jurisdiction**

In its Second Amended Complaint, Plaintiff has written a lengthy dissertation on Mr. Tabora's alleged knowledge of the whereabouts of Plaintiff's corporate headquarters. It spends 22 paragraphs over almost four pages arguing as to why personal jurisdiction is appropriate, including a paragraph stating that the Plaintiff's work "clearly discloses on its introductory title screen that the work is produced by a San Diego business. See Exhibit 1..." [Doc. No. 18, Second Amended Complaint, at 6.]

Well, Exhibit 1 doesn't really disclose the location of the principal place of business of company holding the copyright—it merely states the address where the Plaintiff stores the records proving its actors are over 18.

Even so, it's quite a stretch to conclude that, since Plaintiff shows a screen on its videos stating where it stores its legal records, therefore Mr. Tabora "expressly aimed" his allegedly infringing activity at California. Such a conclusion would require a very twisted chain of logic to achieve.

The legal age-notice that Liberty Media puts on its videos is required by Federal law for all adult films. Everyone who watches an adult film is exposed to that legal notice (unless he or she fast-forwards past the thing). To conclude, then, that everyone who watches an adult film knows the location of the principal place of business for the company that produced the film would be a sweeping and strange conclusion indeed.

Furthermore, Plaintiff's whole argument is getting absurdly technical in its attempts to keep the case in this forum.  <u>Mavrix Photo, Inc. v. Brand Techs, Inc.</u>, 647 F.3d 1218 (9th Cir. 2011), which the Court quotes extensively in its first order to dismiss, features a defendant who "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries." [Doc. No. 17 at 6].

How very different than this case.  The <u>Mavrix</u> case was about a corporate Defendant who was prominently involved in the Hollywood scene, had a popular money-making website devoted to California celebrities, and focused all its publicity efforts specifically on the entertainment industry.  This case, on the other hand, is about a guy who may or may not have seen some legal notice on a video at some point.  Hardly enough to give a state on the opposite side of the continent personal jurisdiction over him.

**3. Plaintiff's allegations that Mr. Tabora participated in a torrent in which California residents also participated is not enough to confer personal jurisdiction**

A web "torrent" is a form of peer-to-peer communication whereby computers make available to other computers one or more stored files.  "Seeders" are generally doing the uploading while "peers" are generally doing the downloading, until the "peer" has the complete file or set of files on its machine, at which time it becomes a seeder too, unless it exits the torrent.  But this picture is complicated by the fact that peers can also download parts of the file(s) from other peers, while those peers are downloading other parts of the file(s) from yet other peers.  All around the world.  This confusing conglomeration of linked computers is called a "swarm" because it has all the characteristics of a chaotic gathering of bees, buzzing in all directions at once, coming and going at will.

And, just as it's almost impossible to tell where each individual bee in a swarm has come from or gone to, it's essentially impossible to tell where each computer in the swarm has received its data or sent its data, unless you are actually sitting at that computer watching.

In paragraph 26 of its Second Amended Complaint, Plaintiff alleges that "at least 136 California residents received the Motion Picture from the torrent swarm in which Tabora participated." Note that Plaintiff doesn't say that these California residents received the motion picture from Mr. Tabora himself, just from the swarm in general. This is because an outside observer cannot know which peers are connected with each other, only the peers themselves know.

Ms. Erika Dillon's Declaration states that "Mr. Tabora's Internet Protocol ('IP') address was 547 of 1387 in the swarm. Thus 840 people downloaded (at least in part) this film from this IP address." [Dillon Decl. ¶ 7]

But this assertion is factually false. Just because an IP address is tagged as part of a swarm does not mean that every IP address joining the swarm afterward downloaded something from it. Again, it's like a swarm of bees—just because one bee joined the swarm after another bee doesn't mean that the two bees ever came into contact with each other. Such a conclusion simply cannot be drawn.

But, in discussing the technical details of peer-to-peer networking we're losing sight of the big picture, which is this: Plaintiff has still not shown in any conceivable way that Mr. Tabora ever "expressly aimed" his conduct at the state of California.

As this court wrote in its prior order dismissing the complaint for lack of personal jurisdiction, "[M]ere web presence is insufficient to establish personal jurisdiction." [Doc. No. 17 at 6 quoting Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007).]

Assuming, for the purposes of this motion, that Plaintiff's allegations are true, Mr. Tabora's actions would have been the quintessence of "mere web presence." Nobody in a torrent swarm knows or cares about the physical location of all the hundreds or thousands of other members of the swarm. To hold otherwise would mean that everyone who engages in internet sharing would be open to personal jurisdiction anywhere any other member of a swarm is physically located, whether known or not, around the entire world.

1  Instead of that rather sweeping conclusion, it would seem much more logical to find
2  that the proper jurisdiction for this case, against these defendants, is in New York, where they
3  currently reside and have for years, and where the activities bringing about this suit are
4  alleged to have actually taken place.  Not in some netherworld of cyberspace, but in the real
5  world, in New York City.

**C. Personal jurisdiction would not comport with fair play and substantial justice**

To hold that not one but now two graduate students living and working in New York City must fly across the country to defend a suit filed against them in San Diego by a media conglomerate that is no longer materially located in this jurisdiction does not "comport with fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Knowing this, Plaintiff has not put forth any arguments as to why it would be fair and just.  Indeed, forcing two students to travel that far would likely prevent them from mounting an effective defense and would dramatically skew any further settlement negotiations against them.  It would result in a very tilted playing field.  Because of this, the Second Amended Complaint should be dismissed, just as the original complaint was.

## II.  THE COURT SHOULD DISMISS FOR IMPROPER VENUE

Because the court did not address the issue of improper venue in its previous order dismissing this case, it is re-argued in full below.

**A. Venue Fails for the Same Reasons Specific Personal Jurisdiction Failed**

The Supreme Court has held that the venue of suits for infringement of copyright is determined by the specific copyright venue provision passed by Congress. Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 176 (1923).  See also Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966) (noting that if the plaintiff's cause of action was a claim under federal

1    copyright law, "the suit may be brought only in the district where the defendant 'resides or
2    may be found'" (quoting 28 U.S.C. § 1400(a)); Goldberg v. Cameron, 482 F.Supp.2d 1136,
3    1143 (N.D. Cal. 2007) (section 1400(a) governs venue for copyright infringement suits (citing
4    Lumiere).

5    The 9th Circuit has interpreted the phrase "may be found" to allow venue in any
6    judicial district where, if treated as a separate state, the defendant would be subject to personal
7    jurisdiction. Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d
8    284, 289 (9th Cir.1997), rev'd on other grounds; Feltner v. Columbia Pictures Television, Inc.,
9    523 U.S. 340 (1998).

10   This too requires the "Calder-effects" test which fails for the reasons argued above—
11   Defendant did not "purposely direct" his activities toward the Southern District of California.

12   And even if Plaintiff states that Defendant could have foreseen his alleged effects on
13   this District, the 9th Circuit has emphasized that "something more than mere foreseeability [is
14   required] in order to justify the assertion of personal jurisdiction," Schwarzenegger, 374 F.3d
15   at 805.

16   To hold otherwise would subject every internet user to personal jurisdiction, and to
17   venue, in every district court in the land.  Internet data frequently travel across the country
18   and around the world without users ever knowing or caring where, even though the more
19   learned of them could arguably "foresee" the paths upon which it might travel.  One web site
20   may transfer digital information through a dozen different districts, and to argue that the user
21   "purposely directed" his data through every district on the way would simply be untrue.  It is
22   the infrastructure of the internet itself that directs traffic, not each individual person.

23

24   **B. The Court Should Dismiss Rather than Transfer Venue to the Southern District of**
25   **New York**

26   The court has the power to transfer this case under 28 USC § 1404(a) to the Southern
27   District of New York in the interest of justice and for the convenience of parties and
28

1   witnesses.  Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 538 (6th Cir. 2002).

2   All parties, as well as the Plaintiff's attorney, are based outside California.  In addition,
3   Mr. Tabora intends to call newly added defendant, Mr. Whetstone, to testify at trial.  Mr.
4   Whetstone also resides—and has for years—in New York City, and he too has no meaningful
5   connection to California.  These two defendants are students and have little money to fly
6   across the country to defend themselves in a federal lawsuit.  Therefore, the interest of justice
7   and the convenience of parties and witnesses would be served by transferring this case.

8   But when, as here, Plaintiff files its case in the wrong court, 28 U.S.C. § 1406(a)
9   authorizes that Court to dismiss the case outright.

10  It is appropriate for this Court to dismiss rather than transfer an action when a plaintiff
11  has "committed an obvious error in filing [its] action in the wrong court, and thereby imposed
12  substantial unnecessary costs on both the defendant and the judicial system."  Nichols v. G.D.
13  Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993) (affirming a dismissal for lack of personal
14  jurisdiction).

15  In such a circumstance, it would not serve the interests of justice and judicial economy
16  "simply to transfer [the] action to the proper court, with no cost" to Plaintiff.  Id.; Coté v.
17  Wadel, 796 F.2d 981, 984-85 (7th Cir. 1986) (Posner, J.) (dismissing rather than transferring
18  an action because "litigants and the public will benefit substantially in the long run from
19  better compliance with the rules limiting personal jurisdiction").

20  Here, Plaintiff knew Mr. Tabora's residential address in New York, not just his IP
21  number.  It knew the appropriate venue would be in the Southern District of New York rather
22  than San Diego.  It knew that this court dismissed its original complaint for the very reasons
23  put forth in this motion.  And it knows that the statute of limitations for its action will not
24  prevent refiling.  But instead of simply starting a new case in New York, it has filed an
25  amended complaint here in the very same district.  It has wasted the court's time as well as the
26  Defendants' limited resources for no real reason, and therefore the case should be dismissed.

## CONCLUSION

For all of the above reasons, Defendant Cary Tabora respectfully requests that the court dismiss this action.

Dated: November 11, 2011                    Respectfully submitted,


   /s/ William Skinner
WILLIAM SKINNER (257139)
Attorney for Defendant
CARY TABORA