Marc J. Randazza, Esq., CA Bar No. 269535
Randazza Legal Group
6525 Warm Springs Rd., Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
MJR@randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC<br><br>  Plaintiff,<br><br>  vs.<br><br>CARY TABORA AND SCHULYER WHETSTONE,<br><br>  Defendants. | Case No. 3:11-CV-00651-IEG -JMA<br><br>**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Judge: Hon. Irma E. Gonzalez |

**TABLE OF CONTENTS**

TABLE OF AUTORITIES ................................................................................................ ii

I. Introduction and Legal Standards ........................................................................... 1

II. The Court has Personal Jurisdiction Over the Defendant ..................................... 2

    A. The Law Supports Jurisdiction in San Diego since the Defendant is alleged to have willfully infringed upon copyrights owned by a forum resident, and which the Defendant knew emanated from San Diego ........................................................ 3

    B.  Finding of Personal Jurisdiction Is Reasonable .......................................... 8

III. Alternate Relief ..................................................................................................... 13

    A.  Jurisdictional Discovery ............................................................................ 13

    B.  Transfer Rather Than Dismissal ............................................................... 14

IV. Conclusion ............................................................................................................ 15

# TABLE OF AUTORITIES

*3DO Co. v. Poptop Software, Inc.*,
  1998 U.S. Dist. Lexis 21281(N.D.Cal. Oct. 27, 1998) .......................................................... 5

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ................................................................................................ 4, 8

*Berlin Media Art v. Does 1 - 654*,
  2011 U.S. Dist. LEXIS 120257 (N.D. Cal. Oct. 18, 2011) .................................................. 7-8

*Billing v. Credit Solutions of Am.*,
  2010 U.S. Dist. LEXIS 63314 (S.D. Cal. June 21, 2010) ...................................................... 14

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ................................................................................................ 1

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ................................................................................................ 3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) .................................................... 8-9

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................................................ 4

*Caruth v. Int'l Psychoanalytical Ass'n*,
  59 F.3d 126 (9th Cir. 1995) ........................................................................................ 2, 9, 11

*Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*,
  106 F.3d 284 (9th Cir. 1997) ........................................................................................ 3-4, 13

*CompuServe Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) .................................................................................................. 8

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .................................................................................................. 5

*Dean v. Motel 6 Operating L.P.*,
  134 F.3d 1269 (6th Cir. 1998) .............................................................................................. 14

*Deprenyl Animal Health, Inc. v. Univ. of Tornoto Innovations Found.*,
  297 F.3d 1343 (Fed. Cir. 2002) .............................................................................................. 1

*DigiProtect USA Corp. v. Doe*,
  2011 U.S. Dist. LEXIS 109464 (S.D.N.Y. Sep. 26, 2011) .................................................... 7

*Feltner v. Columbia Pictures Television*,
  523 U.S. 340, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998) .................................................... 4

*Fireman's Fund Ins. Co. v. M/V DSR Atlantic*,
  131 F.3d 1336 (9th Cir. 1998) .............................................................................................. 11

*FTC v. Publ'g Clearing House, Inc.*,
   104 F.3d 1168 (9th Cir. 1997) .................................................................................................. 9

*Gordy v. Daily News, L.P.*,
   95 F.3d 829 (9th Cir. 1996) ..................................................................................................... 11

*Haisten v. Grass Valley Med. Reimbursement*,
   784 F.2d 1392 (9th Cir. 1986) .................................................................................................. 8

*In re Aimster Copyright Litig.*,
   334 F.3d 643 (7th Cir. 2003) .................................................................................................... 6

*Io Group, Inc. v. Pivitol, Inc.*,
   2004 U.S. Dist. LEXIS 6673 (N.D.Cal. Apr. 19, 2004) ...................................................... 5, 8

*Janel Russell Designs, Inc. v. Mendelson & Assocs.*,
   114 F. Supp. 2d 856 (D. Minn. 2000) ....................................................................................... 4

*Louis Vuitton S.A. v. Lee*,
   875 F.2d 584 (7th Cir. 1989) .................................................................................................... 7

*Marshall v. McCown Deleeuw & Co.*,
   391 F.Supp.2d 880 (D. Idaho 2005) ....................................................................................... 14

*Mediquist MRC, Inc. v. Dayanici*,
   191 F.R.D. 125 (N.D. Ohio 1999) .......................................................................................... 14

*Myers v. Malley Law Offices*,
   238 F.3d 1068 (9th Cir. 2000) .................................................................................................. 6

*Nation v. United States Gov't*,
   512 F. Supp. 212 (S.D. Ohio 1981) ........................................................................................ 14

*Nu Image, Inc. v. Doe*,
   2011 U.S. Dist. LEXIS 83293 (D.D.C. July 29, 2011) ............................................................ 8

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ................................................................................................................ 13

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .......................................................................................... *passim*

*Panavision Int'l, L.P. v. Toeppen*,
   938 F. Supp. 616 (C.D. Cal. 1996) *aff'd,* 141 F.3d 1316 (9th Cir. 1998) ....................... 9-10

*Patrick Collins, Inc. v. Doe*,
   2011 U.S. Dist. LEXIS 117566 (S.D. Cal. Oct. 12, 2011) ....................................................... 8

*Penguin Group, Inc. v. American Buddha*,
   609 F.3d 30, 95 U.S.P.Q.2d (BNA) 1217 (2d Cir. 2010) ......................................................... 3

*Righthaven LLC v. South Coast Partners, Inc.*,
   2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011) ............................................................. 4

*Roth v. Garcia Marquez,*
  942 F.2d 617 (9th Cir. 1991) ................................................................................ 9

*Schwarzenegger v. Fred Martin Co.,*
  374 F.3d 797 (9th Cir. 2004) ............................................................................ 1, 2

*Shell v. Shell Oil Co.,*
  165 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................. 14

*Sher v. Johnson,*
  911 F.2d 1357 (9th Cir. 1990) .......................................................................... 10

*Sinatra v. National Enquirer, Inc.,*
  854 F.2d 1191 (9th Cir. 1988) .......................................................................... 11

*United Liberty Life Ins. Co. v. Pinnale West Capital Corp.,*
  149 F.R.D. 558 (S.D. Ohio 1993) ..................................................................... 14

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
  556 F.2d 406 (9th Cir. 1977) ........................................................................ 13-14

*WNS, Inc. v. Farrow,*
  884 F.2d 200 (9th Cir. 1989) .............................................................................. 1

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
  433 F.3d 1199 (9th Cir. 2006) ............................................................................ 5

**LIBERTY MEDIA HOLDINGS, L.L.C.** (hereinafter, Plaintiff "Liberty") hereby files this Opposition to the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (ECF 21)

## I. INTRODUCTION AND LEGAL STANDARDS

The Motion should be denied. The "evidence" attached to it has no persuasive value. The legal arguments in it are unsupportable. If the Court is inclined to consider the Defendant's arguments against jurisdiction to have any merit, the Plaintiff should have a right to conduct jurisdictional discovery.

"[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (9th Cir. 1989). Any dispute about the facts must be resolved in the Plaintiffs favor. *Schwarzenegger v. Fred Martin Co.,* 374 F.3d 797, 800 (9th Cir. 2004) ("Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (same). See also *Deprenyl Animal Health, Inc., v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1347 (Fed. Cir. 2002) ("[A]ll factual disputes must be resolved in [plaintiff's] favor in order to evaluate its prima facie showing of jurisdiction."). Even in the absence of evidence in the record, the allegations in the complaint are sufficient to defeat the motion.

The complaint contains sufficient allegations which, if true, would support jurisdiction over the Defendant. To the extent that the Defendant has attempted to refute them, he has done so with a limited declaration with little more than conclusory statements and a memorandum with unsupported arguments of counsel. The motion lacks the sufficiency to overcome the presumptions given to the Plaintiff by the 9th Circuit. Even if it did, there is record evidence to securely shore up the allegations.

1

In *Schwarzenegger*, the Court articulated a three-prong test for analyzing claims of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities;
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802

Mr. Tabora had direct transactions with the Plaintiff prior to his infringement. (ECF 11 ¶ 5)  Tabora distributed the infringing materials to forum residents thereby conducting activities within the forum.  (ECF 18-2)  The allegations in the Second Amended Complaint are based upon this infringing distribution.  (ECF 18 ¶ 20, 26)  Evidence backs up these allegations. (ECF 18-2; 18-4 ¶ 7-8)  A prima facie showing of personal jurisdiction has been made, and that is enough. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (stating that the court only needs to evaluate the plaintiff's pleadings and affidavits to make a prima facie showing of personal jurisdiction).  The evidence supporting the Plaintiffs position simply nails the lid shut.

**II.   THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT**

Mr. Tabora can not credibly argue that he was unaware of the fact that the Plaintiff was in San Diego when the infringement took place. Mr. Tabora contracted with the Plaintiff for two years. (ECF 11 ¶ 5)  During that time, he downloaded 157 of the Plaintiff's movies. (ECF 15 ¶ 6)  Of these 157 films, 144 of them begin with a title screen that shows that the Plaintiff is located in San Diego, California. (ECF 15 ¶ 6)  The

film at issue in this case had the same title screen disclosing the Plaintiff's location. (ECF 18-1; 18-4 ¶ 5-6)

Tabora claims that this case "*is about a guy who may or may not have seen some legal notice on a video at some point*" (ECF 21-2 at 5). However, the allegations and the fact behind them demonstrate that this flippant evaluation is unsupportable. Mr. Tabora viewed at least 145 videos containing the legal notice. He downloaded 144 of them during his membership to the Plaintiff's website. Then, he viewed the illegal DVD copy at issue in this case. All clearly stated the Plaintiff's location and informed the Defendant that the Plaintiff was a forum resident, thus leading to the conclusion that any tort committed against the Plaintiff would cause harm here. (ECF 15 ¶ 6) Tabora's feigned surprise at the Plaintiff's location is unpersuasive. If he was not fully aware of the facts alleged, then he has achieved a level of willful blindness that is unrivaled.

**A.   The Law Supports Jurisdiction in San Diego since the Defendant is alleged to have willfully infringed upon copyrights owned by a forum resident, and which the Defendant knew emanated from San Diego.**

It is well-established that a copyright infringement plaintiff has the privilege of bringing suit in its home jurisdiction, and need not chase every infringer to each and every far flung jurisdiction. See *Penguin Group, Inc. v. American Buddha*, 609 F.3d 30, 95 U.S.P.Q.2d (BNA) 1217 (2d Cir. 2010) (jurisdiction is proper where the copyright owner is located). The 9th Circuit embraces this theory. See *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010); *Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.,* 106 F.3d 284, 289 (9th Cir. 1997) ("Columbia alleged, and the district court found, that Feltner willfully infringed copyrights owned by Columbia, which, as Feltner knew, had its principal place of business in the Central District. This fact alone is sufficient to satisfy the 'purposeful availment' requirement.").

3

Copyright infringement is an intentional tort. See *Columbia*, 106 F.3d at 289 (9th Cir. 1997), overruled on other grounds by *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998*); Janel Russell Designs, Inc. v. Mendelson & Assocs.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000). Infringement upon copyrights owned by a known forum resident is alone enough to establish "purposeful availment" under the jurisdictional analysis.  See *Columbia*, 106 F.3d at 289; *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Righthaven LLC v. South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011) (when defendant knew or should have known that intellectual property infringed upon comes from a Nevada source, jurisdiction was proper in Nevada).  An individual subjects himself to personal jurisdiction in a state when he engages in intentional acts, which he knew would cause harm in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) ("In tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state.").  Tabora did just that.

In this case, the infringement was expressly aimed at San Diego.  The majority of work at issue clearly came from a San Diego publisher, as the opening screen on the film clearly announced this fact.  (ECF 18-1; 18-4 ¶ 5-6)  Conduct is "expressly aimed" when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  Mr. Tabora had knowledge of the Plaintiff's location.  (ECF 11 ¶ 5; 15 ¶ 6; 18-1; 18-4 ¶ 5-6)  The court has already held that the forum selection cause, to which Tabora agreed, is not controlling.  (ECF 17)  Nevertheless, the forum selection clause, to which Tabora freely agreed, makes a clear disclosure of the Plaintiff's location, thus it gave the Defendant fair notice of where the

4

harm would be felt in the event he committed a tort against the Plaintiff.  Defendant received warning of this from the agreement he willingly consented to, and also from the title screens of the vast majority of the videos he viewed as a member.  (ECF 15 ¶ 6)  Furthermore, the infringed upon film contained a clear statement of the Plaintiff's location.  (ECF 18-1.)  This listed the same information as 144 of the films that Tabora downloaded during his two year relationship with the Plaintiff.  (ECF 15 ¶ 6; ECF 11 ¶ 5)  Tabora knew where harm would be felt.

The Effects Doctrine holds that personal jurisdiction can be based on "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered -- and which the defendant knows is likely to be suffered -- in the forum state." *Toeppen* 141 F.3d at 1321 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993).  See also, *Io Group, Inc. v. Pivitol, Inc.*, 2004 U.S. Dist. LEXIS 6673*16 (N.D.Cal. Apr. 19, 2004).

In *Toeppen*, the Ninth Circuit specifically stated that, "[b]ecause the defendant's tortious behavior was knowingly aimed at a company whose principal place of business was in California, and whose industry -- the entertainment industry -- was primarily located in California, defendant's conduct was likely to have an effect in the forum state.  As defendant knew his actions were likely to cause harm in California, under the 'effects test,' the purposeful availment requirement necessary for specific, personal jurisdiction was satisfied." *Toeppen* at 1322.  Courts have applied the same principle in the copyright infringement context.  *3DO Co. v. Poptop Software, Inc.*, 1998 U.S. Dist. Lexis 21281(N.D. Cal. Oct. 27, 1998), citing *Toeppen*, 141 F3d at 1322; *Pivitol,* 2004 U.S. Dist. LEXIS at *16.  See also *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  If a defendant should be deemed

to have constructive knowledge of the location of a Plaintiff, and the location of harm visited upon the Plaintiff, just because the Plaintiff is in the entertainment industry, then certainly, Mr. Tabora is well within the boundaries drawn around defendants properly subject to jurisdiction.

In this case, it is alleged that the Defendant, intentionally reproduced and distributed works belonging to plaintiff by and through BitTorrent protocol. (ECF 18 ¶ 2) It is further alleged that the Defendant distributed the work to 136 Californians. (ECF 18-2; 18-4 ¶ 8) The Defendant knew or was willfully blind to the fact that this would have had an effect in California. Further, these works were entertainment – specifically adult entertainment. With California as the epicenter of that industry, *Toeppen's* logic clearly applies. Both academic papers and news articles from mainstream media services acknowledge that the epicenter of the adult entertainment industry in the United States is located in California. See Declaration of Erika Dillon at ¶ 9 (hereinafter "Dillon Dec."); see also **Exhibits B-D**.

Defendant is alleged to have knowingly infringed Plaintiff's works, understanding that the negative effect of such infringement would be suffered in California, and to have distributed infringing copies to 136 Californian residents. (ECF 18-2; 18-4 ¶ 8) If the Plaintiff would not have been injured, but for the Defendants forum-related conduct, then jurisdiction is proper. *Myers v. Malley Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000).

"Willful blindness is knowledge, in copyright law as it is in the law generally." *In re Aimster Copyright Litig.,* 334 F.3d 643, 650 (7th Cir. 2003) (internal citations omitted). If after having a membership for over two years, viewing 144 works produced by the Plaintiff with title screens listing San Diego as the Plaintiff's location, and viewing the illegally downloaded DVD with a title screen listing San Diego as the Plaintiff's

6

location, Mr. Tabora was not aware that the Plaintiff was a California resident, Mr. Tabora was clearly willfully blind to the Plaintiff's location.

Furthermore, BitTorrent protocols do not offer anonymity to those participating in the swarms.  Dillon Dec. ¶ 6-8.  The vast majority, and particularly the most used, operating platforms for the BitTorrent protocols display for users the IP addresses of other members involved in the swarm and these IP addresses allow individuals to easily determine the state that the IP address is from.  Dillon Dec. ¶ 6-8.  While Defendant's Motion to Dismiss asserts (without citing anything) that it is "essentially impossible" to know the location of the other members of the swarm "unless you are actually sitting at the computer watching" (ECF 21-2 at 5), this is factually incorrect.  The most frequently utilized BitTorrent clients create "logs" of the IP addresses involved in the swarm.  Dillon Dec. ¶ 8; **Exhibit A**.  Either the Defendant was at the computer during the time of the illegal swarm activities, in which case he would have been able to view the IP addresses of the other users of the swarm in real time, or he was not but chose not to know the IP addresses and, therefore, locations of the other members of the swarm.  In *Louis Vuitton S.A. v. Lee,* the 7th Circuit found "that the defendant failed to inquire further because he was afraid of what the inquiry would yield" to be sufficient example of willful blindness and that "willful blindness is knowledge enough." 875 F.2d 584 (7th Cir. 1989).  Defendant knew, or should have known, that he was causing harm in California.  Many courts have recognized the ease of determining where a party is on the basis of their IP address.  See *DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 2011 WL 4444666 at *1 (S.D.N.Y. Sep. 26, 2011) (stating that "[p]ublicly available software provides basic, or at least presumptive, geographic information about IP addresses"); *Berlin Media Art v. Does 1 - 654*, 2011 U.S. Dist. LEXIS 120257 (N.D.

7

Cal. Oct. 18, 2011); *Patrick Collins, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 117566 (S.D. Cal. Oct. 12, 2011); *Nu Image, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 83293 at *16 (D.D.C. July 29, 2011) ("while these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location."). The fact is, when someone uses BitTorrent to distribute a file, the seeder can, if he wants to, tell the geographic location of his audience.

**B.      Finding of Personal Jurisdiction Is Reasonable.**

Once a court finds "the first two elements of a prima facie case - purposeful availment and a cause of action arising from the defendant's contacts with the forum state - then an inference arises that this third factor is present." *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996).  For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  Asserting jurisdiction over Tabora does so.  However, if he disagrees, the burden is upon the Defendant to prove unreasonableness.  "[T]here is a presumption of reasonableness upon a showing that the defendant purposefully directed his actions at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." *Haisten v. Grass Valley Med. Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986) (citing *Burger King*, 471 U.S. at 477) (emphasis in original).  See also, *Pivotal* at *8 ("Defendant bears the burden of demonstrating unreasonableness and must put on a compelling case") (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000) and *Burger King,* 471 U.S. at 476-77.  The Defendant has not presented any evidence of unreasonableness and thus could not meet this burden.  The only evidence provided by the Defendant is the self-serving declaration of the Defendant

8

where he makes many conclusory legal statements, which are of no persuasive or evidentiary value. See *FTC v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1170-71 (9th Cir. 1997) (holding that the president of a company cannot raise a genuine issue of material fact that she was president in name only by introducing "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence").

In *Burger King* the court set forth seven factors to examine when determining the Constitutional reasonableness of personal jurisdiction: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. All but the last fact weigh in favor of finding jurisdiction.

**Purposeful Interjection** - Tabora is alleged to have committed an intentional tort against a known forum resident. He is alleged to have done so by distributing a forum resident's copyrighted materials to hundreds of forum residents. He caused harm here.

**Burden on Defendant of Defending in the Forum** - "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Toeppen* 141 F.3d at 1120; see also *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995) (citing *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir. 1991)). "In this era of fax machines and discount air travel requiring [defendants] to litigate in California is not constitutionally unreasonable." *Panavision Int'l, L.P. v. Toeppen,* 938 F. Supp. 616, 622

9

(C.D. Cal. 1996) *aff'd,* 141 F.3d 1316 (9th Cir. 1998) (quoting *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir. 1990)). This is truer than ever with electronic mail and e-filing now available. Mr. Tabora seems to believe that claiming status as a graduate student (without proof thereof) should curry sympathy. He similarly seems to believe that this court should act prejudicially toward the Plaintiff because it is, as Mr. Tabora argues, a "media conglomerate." (ECF 21-2 at 7) This is a dishonest attempt to tilt the playing field, which should be of no positive effect for Mr. Tabora. Moreover, Mr. Tabora seems to live a bi-state life, where he is registered to vote in Florida, has a driver's license in Florida, and continues to maintain a Florida phone number. (ECF 10-13; 15 ¶ 4) Therefore, he cannot claim that he simply lives a New York only life, and is a stranger to interstate travel.

Similarly, the wild assertion that Liberty is a "media conglomerate" is bizarre to say the least. Liberty is a small business. It has a mere 25 full time employees. See Declaration of Brian Dunlap at ¶ 4 (hereinafter "Dunlap Dec."). Far from the dishonest characterization of it as a "media conglomerate," Liberty is well below the threshold to qualify as a "small business." See 13 C.F.R. 121.201; Dunlap Dec. ¶ 6. The attempt to try to color this dispute as a David v. Goliath in order to prejudice the proceedings against Liberty is unseemly.

Mr. Tabora has already retained counsel in California, and despite his statement that he will be calling Mr. Whetstone as a witness, he produces no declarations from Mr. Whetstone.[1] If Mr. Whetstone is such a key witness, where is he? While Whetstone was served in New York (ECF 20), he seems to be a Floridian as well. Dillon Dec. ¶ 10-11;

---

[1] It is worth nothing that Mr. Whetstone also seems to have heavy Florida connections. Dillon Dec. ¶ 10-11; **Exhibit E.**

**Exhibit E**. Truly, the inconvenience of litigation in California will be minimal, and, even if it where palpable, mere inconvenience is not sufficient to move this action from the Court. See *Fireman's Fund Ins. Co. v. M/V DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1998). This factor weighs in favor of finding personal jurisdiction.

**Sovereignty -** The exercise of jurisdiction by a federal court in California does not implicate sovereignty concerns of Florida or New York. This factor weighs in favor of finding personal jurisdiction.

**Forum State's Interest -** "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988)). Plaintiff is a California entity and therefore this factor also weighs in favor of finding personal jurisdiction. Dunlap Dec. ¶ 3. Adding further significance is the fact that the industries at issue in this matter are based in California – the adult entertainment industry and the computer technology industry. *Cf. Toeppen* 141 F.3d at 1322 (Defendant should know intentional acts against an industry based in California could result in litigation in California).

**Efficient Resolution -** "This factor focuses on the location of the evidence and witnesses." *Toeppen* 141 F.3d at 1323, citing *Caruth,* 59 F.3d at 129. In this matter the vast majority of witnesses and evidence are located within driving distance of the courthouse. The Plaintiff's key employees and fact witnesses are located nearby. The only obvious non-party witness outside of the southwest is Mr. Whetstone, who Mr. Tabora claims he will call as a witness in this case, but there is no way to know this for certain as Whetstone is conspicuously silent.

11

**Convenient & Effective Relief for Plaintiff -** Plaintiff elected to bring this matter in California, to be represented by its in house counsel, in order to keep litigation costs down for both parties while focusing on settlement. Should the parties litigate in New York, plaintiff will be required to hire New York counsel at considerable additional expense, thereby driving up costs and decreasing settlement opportunities. In the event that the case is litigated in Florida, costs and efficiency will be less, as Plaintiff's counsel is licensed there, and the Plaintiff has facilities and an employee in Florida. Dunlap Dec. ¶ 5. Accordingly, the most efficient resolution will be in California. The least efficient forum would be New York. Florida would be between the two in terms of efficiency. This factor also weighs in favor of finding personal jurisdiction to be reasonable.

**Alternative Forum –** In this case, there are possible alternative forums available in the Southern District of Florida and the Southern District of New York. The Defendant claims to be a New York resident, but the evidence shows him to be a Florida resident. (ECF 10-13; 15 ¶ 14) All record evidence points to Tabora as a resident of the Southern District of Florida. Furthermore, Mr. Whetstone too seems to be a Floridian. Dillon Dec. ¶ 10-11; **Exhibit E.** However, Mr. Tabora has provided a limited declaration suggesting that he would prefer the case take place in the Southern District of New York. (ECF 21-3) Tabora has provided no documentary evidence in favor of the Southern District of New York – merely his own conclusory declaration. Furthermore, since Tabora's declaration contradicts his voter registration records, his phone number, and his drivers' license information, it is suspected that Tabora's stated preference for the Southern District of New York is a strategic maneuver, calculated to increase the costs on the Plaintiff rather than an accurate description of his permanent residence. Accordingly, given the unclear nature of the two possible alternative forums, this factor is (at best)

12

neutral.  However, the fact that the record shows the Southern District of Florida to be a proper alternative forum, while Tabora argues for New York should create enough confirmation that the matter should remain in this Court.

Defendant is subject to limited jurisdiction in the state of California because 1) he took actions that purposefully availed itself of the privilege of conducting activities in California, 2) plaintiff's claims arose from the Defendant's activity aimed toward the state, and 3) jurisdiction is constitutionally reasonable.

The Venue Argument is subsumed into the personal jurisdiction argument.  The Plaintiff has shown that jurisdiction would be proper in the Southern District of California if that District were a separate state.  Because Tabora would be amenable to personal jurisdiction in the Southern District if the District were a separate state, venue is proper under 28 U.S.C. § 1400(a). *Columbia*, 106 F.3d at 290.

### III.   ALTERNATE RELIEF

**A.    Jurisdictional Discovery**

Although discovery is generally not permitted before the parties have conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Rule 26(d) provides that parties may be permitted to engage in discovery before that time when authorized by the rules or by court order. Fed.R.Civ.P. 26(d).  Rule 26(b)(1) of the Federal Rules provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense ..." Fed. R. Civ. P. 26(b)(1). Therefore, the court may permit jurisdictional discovery before a 26(f) conference. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Such discovery is available to discover facts bearing on issues of jurisdiction. *Oppenheimer Funds*, 437 U.S. at 350-351. " 'Where pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary' courts should allow for discovery." *Wells Fargo & Co. v. Wells Fargo*

*Express Co.*, 556 F.2d 406, 430 (9th Cir. 1977); *Marshall v. McCown Deleeuw & Co.*, 391 F.Supp.2d 880, 882 (D. Idaho 2005).

If Defendant continues to maintain the position that personal jurisdiction is improper, and this Court is inclined to sympathize, the Plaintiff requests leave to conduct jurisdictional discovery in order to ascertain the truly proper jurisdiction for this case and the potential for general jurisdiction. See *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998).

## B.     Transfer Rather Than Dismissal

In the event that this Court determines that this district is not a proper jurisdiction for this case, then the Court should exercise its power under 28 U.S.C. § 1406(a) to transfer the case to another U.S. district rather than dismiss it. "[T]ransfer in and of itself is generally considered to be more in the 'interest of justice' than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district." *Nation v. United States Gov't,* 512 F. Supp. 212, 126-27 (S.D. Ohio 1981); *Shell v. Shell Oil Co.,* 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001) ("[G]enerally it is preferred to transfer the case rather than dismissing it altogether."); *Billing v. Credit Solutions of Am.,* 2010 U.S. Dist. LEXIS 63314 (S.D. Cal. June 21, 2010) ("Where venue is proper in another district, courts prefer to transfer the action, rather than dismiss the action."); *United Liberty Life Ins. Co. v. Pinnacle West Capital Corp.,* 149 F.R.D. 558, 562 (S.D. Ohio 1993) ("Doubts about whether to transfer or dismiss are usually resolved in favor of transfer because the interest of justice generally is better served by transfer."); *Mediquist MRC, Inc. v. Dayanici,* 191 F.R.D. 125, 128 (N.D. Ohio 1999) (district court exercised its discretion to transfer, rather than dismiss, where venue was improper).

Accordingly, at worst, the Court should transfer this matter. If it elects to do so, it

14

should transfer the case to the Southern District of Florida, as this would be more judicially efficient than a transfer to the Southern District of New York.

### IV.   CONCLUSION

For the reasons stated above, the Court should deny the Defendant's motion. If the Court does not deny it in its entirety, it should grant the Plaintiff leave to conduct jurisdictional discovery. If the Court finds that specific jurisdiction standards are not met, and discovery could not possibly convince it otherwise, then the Court should transfer this action to either the Southern District of Florida or the Southern District of New York, rather than dismiss outright.

Date: December 5, 2011.                         s/ Marc J. Randazza
                                                Marc J. Randazza, CA Bar No. 269535
                                                Randazza Legal Group
                                                6525 Warm Springs Rd., Suite 100
                                                Las Vegas, NV 89118
                                                888-667-1113
                                                305-437-7662 (fax)
                                                MJR@randazza.com

15