1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC, a California corporation,<br><br>                                    Plaintiff,<br><br>        vs.<br><br><br>CARY TABORA; and SCHULYER WHETSTONE,<br><br>                                    Defendants. | CASE NO. 11-cv-651 - IEG (JMA)<br><br>**ORDER**<br><br>**(1) GRANTING DEFENDANT TABORA'S MOTION TO DISMISS**<br><br>[Doc. No. 21]<br><br>**(2) DENYING MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 27] |

Presently before the Court is Defendant Cary Tabora ("Tabora")'s motion to dismiss for lack of personal jurisdiction and improper venue. [Doc. No. 21.]  Also before the Court is Plaintiff Liberty Media Holding, LLC (Plaintiff)'s motion for default judgment against Defendant Schulyer Whetstone ("Whetstone"). [Doc. No. 27.]  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss and **DENIES** Plaintiff's motion for default judgment.

## BACKGROUND

This is an action for copyright infringement.  Plaintiff is the creator and producer of adult movies.  [Doc. No. 18, SAC ¶ 32.]  Plaintiff is the registered owner of the copyright to the motion picture, "Corbin Fisher's Down on the Farm." [Id. ¶ 1.]  Plaintiff alleges that on November 16, 2010, Defendants used the IP address 68.175.79.147 to illegally republish and illegally distribute copies of Plaintiff's copyrighted work to at least 840 other individuals over the Internet, including

1   136 residents of California, causing at least $50,400 in actual damages to Plaintiff.  [Id. ¶¶ 26, 36.]

2   Plaintiff alleges that Defendants distributed Plaintiff's copyrighted work using a peer-to-peer file

3   sharing protocol known as BitTorrent.[1]  [Id. ¶¶ 37-51.]

4           On March 31, 2011, Plaintiff brought the present action against Defendant Tabora alleging

5   a cause of action for copyright infringement.  [See Doc. No. 1, Compl.]  Plaintiff later filed an

6   amended complaint adding Defendant Whetstone, but Plaintiff later withdrew that amended

7   complaint.  [Doc. Nos. 4, 7.]  On October 4, 2011, the Court granted Defendant Tabora's motion

8   to dismiss Plaintiff's complaint for lack of personal jurisdiction and granted Plaintiff leave to file

9   an amended complaint.  [Doc. No. 17.]  On October 21, 2011, Plaintiff filed a second amended

10  complaint ("SAC") adding Defendant Whetstone and containing new allegations related to

11  personal jurisdiction and venue.  [SAC.]  On November 11, 2011, Defendant Tabora responded to

12  Plaintiff's SAC by filing the present motion to dismiss for lack of personal jurisdiction and

13  improper venue.  [Doc. No. 21.]  Defendant Whetstone failed to respond to Plaintiff's SAC, and

14  the Clerk entered default against him on November 17, 2011.  [Doc. No. 23.]  Shortly thereafter,

15  Plaintiff filed the present motion for default judgment against Defendant Whetstone.  [Doc. No.

16  27.]

17                                      **DISCUSSION**

18  **I.      Personal Jurisdiction**

19          Defendant Tabora argues that this Court does not have general or specific personal

20  jurisdiction over him.  [Doc. No. 21-2, Def.'s Mot. at 2-7.]  Plaintiff argues that this Court has

21

22          [1]In Diabolic Video Prods. v. Does 1-2099, a court in the Norther District of California gave
    the following descirption of the BitTorrent protocol:

23

24          The BitTorrent protocol operates as follows.  First, a user locates a small "torrent" file.
        This file contains information about the files to be shared and about the tracker, the
        computer that coordinates the file distribution.  Second, the user loads the torrent file
25      into a BitTorrent client, which automatically attempts to connect to the tracker listed
        in the torrent file.  Third, the tracker responds with a list of peers and the BitTorrent
26      client connects to those peers to begin downloading data from and distributing data to
        the other peers in the swarm.  When the download is complete, the BitTorrent client
27      continues  distributing  data  to  the  peers  in  the  swarm  until  the  user  manually
        disconnects form the swarm or the BitTorrent client otherwise does the same.
28

    2011 U.S. Dist. LEXIS 58351, at *3-4 (N.D. Cal. May 31, 2011).

11cv651

1    specific jurisdiction over Tabora because he distributed Plaintiff's work to California, he knew that

2    his acts of copyright infringement would cause harm in San Diego, and jurisdiction in San Diego

3    is reasonable.  [Doc. No. 26, Pl.'s Opp'n at 2-13.]

4         **A.    Legal Standard**

5         "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First,

6    the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.

7    Second, the exercise of jurisdiction must comport with federal due process."  Chan v. Soc'y

8    Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994).  California's long-arm statute, CAL. CIV.

9    PROC. CODE § 410.10, allows courts to "exercise jurisdiction on any basis not inconsistent with the

10   Constitution of [California] or of the United States."  "This provision allows courts to exercise

11   jurisdiction to the limits of the Due Process Clause of the U.S. Constitution."  Dow Chem. Co. v.

12   Calderon, 422 F.3d 827, 831 (9th Cir. 2005).  Thus, the governing standard here is whether the

13   exercise of personal jurisdiction comports with due process.  Id.

14        "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant

15   must have at least 'minimum contacts' with the relevant forum such that the exercise of

16   jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

17   Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).  "There are two

18   types of personal jurisdiction: general and specific."  Ziegler v. Indian River Cnty., 64 F.3d 470,

19   473 (9th Cir. 1995).  Here, Plaintiff does not argue that the Court has general jurisdiction over

20   Defendant.  Therefore, the only issue is whether the Court has specific jurisdiction over

21   Defendant.

22        The Ninth Circuit has established a three-prong test for analyzing a claim of specific

23   personal jurisdiction:

24        (1) The non-resident defendant must purposefully direct his activities or
          consummate some transaction with the forum or resident thereof; or perform some
25        act by which he purposefully avails himself of the privilege of conducting activities
          in the forum, thereby invoking the benefits and protections of its laws;

26
          (2) the claim must be one which arises out of or relates to the defendant's
27        forum-related activities; and

28        (3) the exercise of jurisdiction must comport with fair play and substantial justice,
          i.e. it must be reasonable.

1   Schwarzeneggar, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two

2   prongs of the test."  Id.  If the plaintiff fails to satisfy either of the first two prongs, personal

3   jurisdiction is not established in the forum state.  Id.  "If the plaintiff succeeds in satisfying both of

4   the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the

5   exercise of jurisdiction would not be reasonable."  Id.

6          "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

7   plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  Schwarzenegger, 374

8   F.3d at 800.  "Where, as here, the motion is based on written materials rather than an evidentiary

9   hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'"  Id.  The

10  reviewing court need "only inquire into whether [the plaintiff's] pleadings and affidavits make a

11  prima facie showing of personal jurisdiction."  Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d

12  126, 128 (9th Cir. 1995).  "Although the plaintiff cannot 'simply rest on the bare allegations of its

13  complaint,' uncontroverted allegations in the complaint must be taken as true."  Schwarzenegger,

14  374 F.3d at 800 (citations omitted).

15          **B.     Analysis**

16          Plaintiff argues that this Court has specific jurisdiction over Defendant because he

17  distributed Plaintiff's work to California and he knew that his acts of copyright infringement

18  would cause harm in San Diego.  [Pl.'s Opp'n at 2-13.]  Defendant argues that there is no specific

19  jurisdiction because he did not have sufficient knowledge of Plaintiff's location and participation

20  in a BitTorrent swarm is insufficient to confer personal jurisdiction over him.  [Def.'s Mot. at 4-7.]

21          The first prong of the three-part Schwarzenegger test looks at whether Defendant

22  "purposefully availed itself of the privilege of conducting activities in California, or purposefully

23  directed its activities toward California."  Schwarzenegger, 374 F.3d at 802.  The Ninth Circuit has

24  explained that "purposeful direction" is the proper analytical framework for claims of copyright

25  infringement, which are often characterized as a tort.  Brayton Purcell LLP v. Recordon &

26  Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

27          Courts evaluate "purposeful direction using the three-part 'Calder-effects' test," from the

28  Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984).  Brayton Purcell, 606 F.3d at

1128.  Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted).[2]

### i.      Intentional Act

The "intentional act" element of the Calder test is easily satisfied in a copyright infringement case.  See Brayton Purcell, 606 F.3d at 1128.  Plaintiff alleges that Defendants engaged in the intentional act of copyright infringement.  [SAC ¶ 20.]  Accordingly, the first element of the Calder-effects test is met in this case.

### ii.      Express Aiming

The second element of the Calder test "requires that the defendant's conduct be expressly aimed at the forum."  Brayton Purcell, 606 F.3d at 1129.  "[M]ere web presence is insufficient to establish personal jurisdiction."  Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007).  However, "operating even a passive website in conjunction with 'something more' — conduct directly targeting the forum — is sufficient."  Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002).  In determining whether a nonresident defendant has done "something more," the Ninth Circuit has considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011).

Plaintiff argues that this Court has specific jurisdiction because Tabora participated in a BitTorrent swarm that resulted in Plaintiff's work being downloaded by users in California.  [Pl.'s

---

[2] The Court notes that in its opposition, Plaintiff argues that personal jurisdiction is proper where the copyright owner is located, citing Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30 (2d Cir. 2010).  [Pl.'s Opp'n at 3.]  However, Plaintiff is incorrect, and Penguin Group does not stand for that proposition.  Penguin Group is not even a case where the court found that it had personal jurisdiction over the defendant; it is merely a case where the Second Circuit certified a question to the New York Court of Appeals, asking it to interpret New York's long-arm statute.  See Penguin Group, 609 F.3d at 42.  Further, because Penguin Group involved the interpretation of New York's long-arm statute, it is not relevant to this Court's determination in the present case of whether the exercise of personal jurisdiction over Defendant Tabora comports with due process.  See id. at 41 (stating that the question of whether personal jurisdiction over defendant satisfied due process was beyond the scope of the appeal and declining to address that issue).

1   Opp'n at 2, 6-8.]  In the SAC, Plaintiff provides four pages of allegations explaining how the

2   BitTorrent protocol works.  [SAC ¶¶ 37-51.]  However, in none of these allegations is an

3   explanation of how Tabora directly targeted California by participating in the BitTorrent swarm.

4   "BitTorrent [allows] users to share files anonymously with other users. . . .  When using the

5   BitTorrent protocol, every user simultaneously receives information from and transfers

6   information to one another."  Diabolic Video, 2011 U.S. Dist. LEXIS 58351, at *3.  [See also SAC

7   ¶¶ 37-43, 48.]  Because every user simultaneously receives and transfers information to the other

8   users in the swarm, a participant in the swarm has no control over where he distributes the

9   information; it is automatically distributed to the other users.  [See SAC ¶ 48 ("Because of the

10  nature of BitTorrent protocol, any seed peer that has downloaded a file prior to the time that a

11  subsequent peer downloads the same file is automatically a source for the subsequent peer."); see

12  also id. ¶¶ 40, 42-43.]  Where the files get distributed to is controlled by the location of the other

13  participants in the swarm, not by the distributor's conduct.  For example, as in this case, if a New

14  York resident participates in a BitTorrent swarm and  a file gets distributed to California, it is not

15  because the New York resident directed the file to California.  It is because another person

16  participating in the swarm happened to be in California.  Therefore, a participant in a BitTorrent

17  swarm does not "directly target" California, even if he participates in a swarm that results in his

18  files being downloaded to a computer in California.  Even taking the allegations in the SAC as

19  true, Tabora's mere web presence is insufficient by itself to establish specific personal jurisdiction.

20  See Mavrix Photo, 647 F.3d at 1229.

21      Moreover, the Court notes that its conclusion is consistent with other district courts that

22  have held that participation in a BitTorrent swarm that results in copyrighted work being

23  distributed to computers in the forum is insufficient by itself to confer specific jurisdiction over a

24  defendant.  See, e.g., Berlin Media Art v. Does 1 - 654, 2011 U.S. Dist. LEXIS 120257, at *4-8

25  (N.D. Cal. Oct. 18, 2011); Millenium TGA v. Doe, 2011 U.S. Dist. LEXIS 110135, at *2-8 (N.D.

26  Ill. Sept. 26, 2011); On The Cheap, LLC v. Does 1-5011, 2011 U.S. Dist. LEXIS 99831, at *14

27  (N.D. Cal. Sept. 6, 2011).  In Berlin Media, a court in the Northern District of California

28  explained:

1
2
3
4
5

The Court is not aware of any caselaw that suggests that this Court has personal jurisdiction over all 654 Defendants simply because "at least one" of the defendants (unidentified) allegedly happened to download the file at some point during the time period in question from a computer located in this District. As one court in this District noted, the logical extension of such an unprecedented holding "would be that everybody who used . . . BitTorrent would subject themselves to jurisdiction in every state." "[T]his is a far cry from the requirement that 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State,' which is the hallmark of specific jurisdiction."

6  Berlin Media, 2011 U.S. Dist. LEXIS 120257, at *7-8 (citation omitted) (quoting On The Cheap,

7  2011 U.S. Dist. LEXIS 99831, at *14). Accordingly, Defendant Tabora's conduct was not

8  expressly aimed at California, and Plaintiff has failed to make a prima facie showing establishing

9  that the second element of the Calder-effects test is met in this case. See Mavrix Photo, 647 F.3d

10  at 1229; Rio Props., 284 F.3d at 1020.

11          iii.        Foreseeability of Harm

12          The third element of the Calder-effects test "requires that [defendant's] conduct caused

13  harm that it knew was likely to be suffered in the forum." Brayton Purcell, 606 F.3d at 1131.

14  "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum."

15  Id. In a copyright case, it is foreseeable that a defendant will cause harm in a particular forum if

16  the defendant knows that the copyright owner resides in that forum. See id.; Columbia Pictures

17  TV v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284, 289 (9th Cir. 1994) ("[Plaintiff] alleged,

18  and the district court found, that [defendant] willfully infringed copyrights owned by Columbia,

19  which, as [defendant] knew, had its principal place of business in the Central District. This fact

20  alone is sufficient to satisfy the 'purposeful availment' requirement."); see also O'Brien v.

21  Nowicki, 2011 U.S. Dist. LEXIS 71645, at *11 (N.D. Cal. Jul. 5, 2011) (finding third element

22  satisfied where "defendants knew that the harm would take place in California because they knew

23  plaintiff lived there").

24          Plaintiff argues that this element is satisfied because Tabora knew that Plaintiff's principal

25  place of business is in San Diego. [Pl.'s Opp'n at 2-8.] Tabora states in a declaration: "[a]t no

26  time before the commencement of this case did I have any idea that Liberty Media or Corbin

27  Fisher had a principal place of business in San Diego." [Doc. No. 21-3, Declaration of Cary

28  Tabora ("Tabora Decl.") ¶ 7.] In response, Plaintiff argues that this statement is not credible

because Plaintiff has viewed 145 of Plaintiff's movies, including the DVD at issue in this case, which all contain the same title screen disclosing Plaintiff's location.  [Pl.'s Opp'n at 2-8; see Doc. No. 15, Declaration of Erika Dillon ("Dillon Decl.") ¶ 6; Doc. No. 18-4, Declaration of Erika Dillon II ("Dillon Decl. II") ¶ 5.]  However, Plaintiff's statement and the statements in the declarations provided by Plaintiff are misleading.  Plaintiff has attached to the SAC, the title screen that supposedly discloses Plaintiff's location.  [SAC Ex. 1.]  The title screen states in relevant part:

> 18 U.S.C. § 2257 Records Keeping Requirement Compliance Statement
>
> . . .
>
> . . . The records required by federal law will be made available by the producer's records custodian at the following location:
>
> 2257 Compliance Manager
> 3696 4th Ave Studio 300
> San Diego, CA 92103

[Id.]  While this statement may disclose the address where Plaintiff is located, it does not disclose the address as belonging to Plaintiff.  Instead, it states that this is the address for the producer's records custodian, not the address of the producer or the copyright owner.  Plaintiff has not explained why someone viewing the address of its records custodian would automatically assume that Plaintiff has the same address.  Therefore, even if the Court were to assume that Tabora saw and read this title screen, this evidence does not show that he had knowledge of Plaintiff's location.  It is merely evidence showing that he might have knowledge of the location of Plaintiff's records custodian.

Plaintiff also argues Tabora had knowledge of Plaintiff's location in San Diego because the terms and conditions agreement that Tabora consented to when he joined Plaintiff's website "makes a clear disclosure of Plaintiff's location."  [Pl.'s Opp'n at 4.]  However, Plaintiff does not cite to the provision in the agreement that contains this clear disclosure.  Based on the Court's own review of the agreement, the agreement does not contain any disclosure of Plaintiff's address in San Diego.  [See generally Doc. No. 10-12, Ex. L.]  In fact, the only address contained in the entire agreement appears to be an address for Plaintiff's counsel in Florida.  [Id. § 10.1 (stating that complaints about the website's content should be mailed to: "Liberty Media Holdings, LLC,

1   c/o Weston, Garrou, Walters & Mooney, 781 Douglas Avenue, Altamonte Springs, FL 32714").]

2   Therefore, even assuming Tabora saw and read the terms and conditions agreement, this evidence

3   also does not show that he had knowledge of Plaintiff's location in San Diego.

4        Plaintiff argues that Tabora should be deemed to have knowledge of Plaintiff's location in

5   San Diego under the willful blindness doctrine.  [Pl.'s Opp'n at 6-7.]  "Willful blindness is

6   knowledge, in copyright law . . . as it is in the law generally."  In re Aimster Copyright Litigaton,

7   334 F.3d 643, 650 (7th Cir. 2003); accord. UMG Recordings, Inc. v. Disco Azteca Distribs., 446

8   F. Supp. 2d 1164, 1173 (E.D. Cal. 2006).  The doctrine of willful blindness has two basic

9   requirements:  "(1) the defendant must subjectively believe that there is a high probability that a

10  fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact."

11  Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2070 (2011).  Plaintiff argues that

12  Defendant Tabora was willfully blind of Plaintiff's location because he viewed 145 works

13  produced by Plaintiff with title screens listing San Diego as Plaintiff's location.  [Pl.'s Opp'n at 6-

14  7.]  As stated above, the title screens on Plaintiff's works do not state's Plaintiff's principal place

15  of business; they merely state the location of Plaintiff's records custodian.  [Doc. No. 18-1, SAC

16  Ex. 1.]  A title screen stating that Plaintiff's records custodian is located in San Diego does not

17  show that Tabora had a subjective belief that there was a high probability that Plaintiff was located

18  in San Diego.  Moreover, Plaintiff has not presented any evidence showing that Tabora took

19  deliberate action to avoid learning of Plaintiff's location.  Indeed, Plaintiff has not presented any

20  evidence showing how Tabora could have discovered Plaintiff's location.  Plaintiff only points to

21  the title screen of its movies and the terms and conditions agreement for its website, both of which

22  do not state that Plaintiff's location is in San Diego.  [See Doc. No. 18-1, SAC Ex. 1; Doc. No. 10-

23  12, Ex. L.]  Accordingly, Plaintiff has not made a prima facie showing that Tabora had knowledge

24  of Plaintiff's principal place of business even under the doctrine of willful blindness.

25       Plaintiff also argues that harm in California was foreseeable because California is the

26  epicenter of the adult entertainment industry.  [Pl.'s Opp'n at 5-6.]  In making this argument

27  Plaintiff relies on the following language from the Ninth Circuit's decision in Panavision Int'l,

28  L.P. v. Toeppen:  "[Defendant] knew Panavision would likely suffer harm [in California] because,

1    although at all relevant times Panavision was a Delaware limited partnership, its principal place of

2    business was in California, and the heart of the theatrical motion picture and television industry is

3    located there." 141 F.3d 1316, 1321 (9th Cir. 1998). Plaintiff argues that this language stands for

4    the proposition that a defendant should be deemed to have constructive knowledge of plaintiff's

5    location, and the location of the harm visited upon plaintiff, simply because plaintiff is in the

6    entertainment industry and that industry is centered in California. [Pl.'s Opp'n at 5-6.] This is a

7    complete distortion of the Ninth Circuit's language in Panavision. Panavision cannot stand for the

8    proposition that constructive knowledge is implied on the defendant in the above situation,

9    because in that case, there was no need to impose constructive knowledge on the defendant since

10   the defendant had actual knowledge of plaintiff's location. See Panavision, 141 F.3d at 1319

11   (stating that defendant had sent a letter to Panavision in California). Panavision merely stands for

12   the proposition that harm in California is foreseeable when the defendant knew that plaintiff was

13   located in California, and plaintiff's industry was primarily located in California. See id. at 1321.

14   Therefore, evidence that the center of the adult entertainment industry is in California is

15   insufficient by itself to establish foreseeability absent additional evidence showing that Defendant

16   knew that the location of Plaintiff's principal place of business was in California. Accordingly,

17   Plaintiff has not make a prima facie showing of jurisdictional facts establishing that the third

18   element of the Calder-effects test–foreseeable effects in the forum–is met in the present case. See

19   Brayton Purcell, 606 F.3d at 1131; Columbia Pictures, 106 F.3d at 289.

20        In sum, the Court concludes that Plaintiff has failed to satisfy the second and third elements

21   of the Calder-effects test. Therefore, Plaintiff has not shown that Defendant purposefully directed

22   his activities toward California, and Plaintiff has not made a prima facie showing of jurisdictional

23   facts establishing that this Court has specific jurisdiction over Tabora. See Yahoo! Inc., 433 F.3d

24   at 1206.

25   **II.    Plaintiff's Request for Jurisdictional Discovery**

26        Plaintiff requests–in the event that this Court determines that it does not have personal

27   jurisdiction over Defendant–leave to conduct jurisdictional discovery "in order to ascertain the

28   truly proper jurisdiction for this case and the potential for general jurisdiction." [Pl.'s Opp'n at

13-14.]

**A.    Legal Standard**

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1997).  However, the mere hunch that discovery "might yield jurisdictionally relevant facts" is insufficient.  Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).  Likewise, jurisdictional discovery is unnecessary "'[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995).

"In order to obtain discovery on jurisdictional facts, the plaintiff must at least make a 'colorable' showing that the Court can exercise personal jurisdiction over the defendant."  Mitan v. Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007); see also Martinez v. Manheim Cent. Cal., 2011 U.S. Dist. Lexis 41666, at *10-11 (E.D. Cal. Apr. 18, 2011) (noting that "district courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal  jurisdiction before discovery is ordered").  "This 'colorable' showing should be understood as something less than a prima facie showing and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant."  Mitan, 497 F. Supp. 2d at 1119.

A court's denial of a plaintiff's request for jurisdictional discovery "will not be reversed except on the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant."  Data Disc, 557 F.2d at 1285 n.1.

**B.    Analysis**

As an initial matter, Plaintiff provides no explanation in its motion of what discovery it seeks to conduct and what facts it expects to uncover if it is granted leave to conduct discovery. [See Pl.'s Opp'n at 13-14.]  Plaintiff's request appears to be based on the mere hunch that it might be able to discover jurisdictionally relevant facts.  This is an insufficient basis for jurisdictional discovery, and Plaintiff's request for discovery should be denied on this basis alone.  Moreover,

1   Plaintiff has not made a colorable showing that this Court might be able to exercise personal

2   jurisdiction over Defendant Tabora.  Participation in a BitTorrent swarm that results in

3   copyrighted work being distributed to computers in the forum is insufficient by itself to confer

4   specific jurisdiction over a defendant.  See Berlin Media Art, 2011 U.S. Dist. LEXIS 120257, at

5   *4-8; Millenium TGA, 2011 U.S. Dist. LEXIS 110135, at *2-8.  In addition, Plaintiff has failed to

6   come forward with any evidence showing that Tabora knew that Plaintiff was located in San

7   Diego.  See supra section I.B.iii.  Accordingly, the Court **DENIES** Plaintiff's request for leave to

8   conduct jurisdictional discovery.

9   **III.   Venue**

10          **A.     Venue Is Improper in the Southern District of California**

11          Defendant also argues that Plaintiff's complaint should be dismissed for improper venue

12   pursuant to 28 U.S.C. § 1406(a).  [Doc. No. 9-2 at 8-10.]  Venue in a copyright action is proper "in

13   any judicial district in which the defendant would be amenable to personal jurisdiction if the

14   district were a separate state."  Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc., 106

15   F.3d 284, 289 (9th Cir. 1994) (citing 28 U.S.C. 1400(a)).  Accordingly, because this Court does

16   not have personal jurisdiction over Tabora, see supra section I, venue is improper in this district.

17   See id.

18          **B.     The Action Should Not Be Transferred to the Southern District of Florida**

19          Plaintiff argues that in the event the Court finds that venue is improper, the case should be

20   transferred to the Southern District of Florida because that is where the Defendants have their

21   permanent place of residence.  [Pl.'s Opp'n at 12-15.]  Tabora argues that the Court should dismiss

22   rather than transfer this action because the interests of justice would not be served by transferring

23   the case.  [Def.'s Mot. at 8-9.]

24          When venue is improper, the Court can either dismiss the case, or "if it be in the interest of

25   justice," transfer it to any district in which it could have been brought.  28 U.S.C. § 1406(a).  The

26   phrase where an action "could have been brought" is interpreted to mean that the proposed

27   transferee court must have subject matter jurisdiction, proper venue, and personal jurisdiction.  See

28   A. J. Industries, Inc. v. U.S. District Court for Central Dist. of Cal., 503 F.2d 384, 386-88 (9th Cir.

1974); Shapiro v. Bonanza Hotel Co., 185 F.2d 777, 779-81 (9th Cir. 1950).  The party seeking

transfer bears the burden of proving that the transferee district is a district in which this action

could have been brought.  Pac. Coast Marine Windshields v. Malibu Boats, 2011 U.S. Dist. LEXIS

139353, at *14-15 (E.D. Cal. Dec. 5, 2011).  As previously stated, venue in a copyright action is

proper in any judicial district in which the defendant would be amenable to personal jurisdiction if

the district were a separate state.  Columbia Pictures, 106 F.3d at 289.  Accordingly, for the Court

to transfer the case to the Southern District of Florida, Plaintiff must show that Defendants are

subject to personal jurisdiction in that district.  See id.

Plaintiff argues that the case should be transferred to the Southern District of Florida

because the Defendants are permanent Florida residents.  [Pl.'s Opp'n at 12-15.]  A person's place

of domicile is sufficient to confer personal jurisdiction over that person even if he is not currently

located within that state.  Milliken v. Meyer, 311 U.S. 457, 462 (1940); see also Gonzales v. Palo

Alto Labs, Inc., 2010 U.S. Dist. LEXIS 110295, at *11 (N.D. Cal. Oct. 6, 2010) (listing a person's

place of domicile as a traditional basis for personal jurisdiction).  A person is "domiciled" in the

location where he or she has established a fixed habitation or abode in a particular place, and

intends to remain there permanently or indefinitely.  Lew v. Moss, 797 F.3d 747, 749-50 (9th Cir.

1986).  "[T]he determination of an individual's domicile involves a number of factors (no single

factor controlling), including: current residence, voting registration and voting practices, location

of personal and real property, location of brokerage and bank accounts, location of spouse and

family, membership in unions and other organizations, place of employment or business, driver's

license and automobile registration, and payment of taxes."  Id. at 750.  A person's place of

domicile is evaluated in terms of "objective facts," and statements of intent are entitled to little

weight.  Id.

The Court is unable to transfer this case because it is unclear from the record where

Defendant Whetstone's permanent place of domicile is located.  Defendant Tabora states in his

declaration that Defendant Whetstone's current place of residence is New York City, which is in

the Southern District of New York, and that this has been his residence for several years.  [Doc.

No. 21-3, Tabora Decl. ¶ 6.]  Plaintiff has presented voter registration records listing Whetstone's

1    residence as Gainesville, Florida, which is in the Northern District of Florida.  [Doc. No. 26-5, Ex.

2    E.]  Plaintiff has also presented driver's license information listing Whetstone's residence as Port

3    St. Lucie, Florida, which is in the Southern District of Florida.  [Id.]  Therefore, it is impossible for

4    the Court to determine's Whetstone's place of domicile from these three conflicting pieces of

5    evidence, and Plaintiff has not met its burden of showing that the action could have been brought

6    in the Southern District of Florida.  It is possible that venue may be proper in the Southern District

7    of New York.  However, neither party has presented argument or analysis in favor of transfer to

8    that district.  In addition, Plaintiff has failed to explain why it would be prejudiced by a dismissal

9    rather than a transfer; for example, by suggesting that it would be prevented from refiling this

10   action in a proper forum due to statute of limitations issues.  See Bray v. Kendall, 2010 U.S. Dist.

11   LEXIS 281, at *16-17 (N.D. Cal. Jan. 5, 2010) (stating that a § 1406(a) transfer may be declined

12   on this basis alone).  Accordingly, exercising its discretion under 28 U.S.C. § 1406(a), the Court

13   declines to transfer the case and instead **DISMISSES** Plaintiff's complaint.

14   **IV.    Plaintiff's Motion for Default Judgment**

15        Defendant Whetstone has not appeared in this action, and Plaintiff has moved for default

16   judgment against him.  [Doc. No. 27.]  A district court "has an affirmative duty" to determine

17   whether it has personal jurisdiction over the defendant before entering a default judgment.  In re

18   Tuli, 172 F.3d 707, 712 (9th Cir. 1999).  In considering whether to enter a default judgment, a

19   court may dismiss an action *sua sponte* for lack of personal jurisdiction.[3]  Id.

20        In its motion for default judgment, Plaintiff contends that this Court has personal

21   jurisdiction over Defendant Whetstone and makes the same arguments in support of this

22   contention that Plaintiff made with respect to Defendant Tabora.  [Doc. No. 27 at 1.]  As stated

23   above, Plaintiff has failed to make a prima showing of jurisdictional facts establishing that the

24   _____

25        [3] The Court notes that the Ninth Circuit in Tuli stated that prior to ruling on the issue of
     personal jurisdiction *sua sponte* on a motion for default judgment, a court should give the Plaintiff an
26   adequate opportunity to demonstrate facts establishing personal jurisdiction over the Defendant.  See
     Tuli, 172 F.3d at 711-13.  Here, Plaintiff has had an adequate opportunity to demonstrate facts
27   establishing personal jurisdiction over Defendant Whetstone.  Plaintiff's motion for default judgment
     addresses the issue of whether the Court has personal jurisdiction over Whetstone.  [See Doc. No. 27
28   at 1.]  In addition, Plaintiff makes the same personal jurisdiction arguments with respect to Defendant
     Whetstone that it made with respect to Defendant Tabora, and these arguments have been fully briefed
     twice in response to Tabora's motions to dismiss.  [See Doc. Nos. 10, 26.]

1  second and third elements of the <u>Calder</u>-effects test are met in this case.  <u>See</u> <u>supra</u> section I.

2  Whetstone's alleged participation in a BitTorrent swarm that resulted in Plaintiff's work being

3  distributed to computer in California is insufficient to establish specific jurisdiction.  <u>See</u> <u>Berlin</u>

4  <u>Media Art</u>, 2011 U.S. Dist. LEXIS 120257, at *4-8; <u>Millenium TGA</u>, 2011 U.S. Dist. LEXIS

5  110135, at *2-8.  Further, it was not foreseeable that Whetstone caused harm in California because

6  Plaintiff has not produced any evidence showing that Whetstone knew of Plaintiff's location.

7  Therefore, Whetstone did not purposefully direct his activities at California, and this Court does

8  not have specific personal jurisdiction over him.  <u>See</u> <u>Yahoo! Inc.</u>, 433 F.3d at 1206.  Accordingly,

9  because the Court lacks personal jurisdiction over Defendant Whetstone, the Court **DENIES**

10  Plaintiff's motion for default judgment and **DISMISSES** Plaintiff's complaint.  <u>See</u> <u>Tuli</u>, 172 F.3d

11  at 712.

12                                          <u>**CONCLUSION**</u>

13          For the reasons above, the Court **GRANTS** Defendant Tabora's motion to dismiss,

14  **DENIES** Plaintiff's motion for default judgment, and **DISMISSES** Plaintiff's complaint for lack

15  of personal jurisdiction.  The Clerk is directed to close the case.

16          **IT IS SO ORDERED.**

17  **DATED:** January 4, 2012

18                                          **IRMA E. GONZALEZ, Chief Judge**
                                            **United States District Court**

- 15 -

11cv651